**No. 24-1942**

# United States Court of Appeals For the First Circuit

———————————

BLUERADIOS, INC., a Colorado corporation,

*Plaintiff–Appellant*,

v.

HAMILTON, BROOK, SMITH & REYNOLDS, P.C. a Massachusetts professional corporation; DAVID J. THIBODEAU, JR., an individual; LAWRENCE P. COGSWELL, III, an individual; GERALD KAZANJIAN, an individual; STEPHEN D. BROOK, as Personal Representative of the Estate of David E. Brook; JOSHUA MATLOFF, an individual; NELSON SCOTT PIERCE, an individual,

*Defendants–Appellees*.

———————————

On Appeal from the United States District Court for the District of Massachusetts, Case No. 1:21-CV-10488-DJC, the Hon. Denise J. Casper, District Judge

———————————

## PUBLIC APPELLEES' BRIEF

———————————

Carolyn J. Fairless
David J. Schaller
Frederick R. Yarger
William D. Hauptman
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:  303.244.1800
Facsimile:   303.244.1879
E-mail:    fairless@wtotrial.com
           schaller@wtotrial.com
           yarger@wtotrial.com
           hauptman@wtotrial.com

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, the undersigned certifies that Hamilton, Brook, Smith & Reynolds, P.C. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

*s/ Carolyn J. Fairless*
Carolyn J. Fairless

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ...................................................................... iv

INTRODUCTION ............................................................................... 1

STATEMENT OF ISSUES ...................................................................... 5

STATEMENT OF THE CASE .................................................................... 6

    A.    Kopin introduced BlueRadios to "Kopin's IP law firm," HBSR .......... 6

    B.    BlueRadios learned the facts underlying this lawsuit in 2008 and 2009. ........................................................................ 8

    C.    In 2009, BlueRadios' relationship with Kopin broke down and BlueRadios ceased communicating with HBSR. ................................ 12

    D.    BlueRadios' patent attorney investigated HBSR's work, and learned of BlueRadios' alleged harm, in November 2014 ................. 13

    E.    BlueRadios sued Kopin in Colorado in 2016, asserting for the first time that HBSR represented BlueRadios, and later sued HBSR in Massachusetts. .................................................... 17

SUMMARY OF ARGUMENT ................................................................... 19

ARGUMENT ................................................................................. 23

I.    BlueRadios' claims are time-barred because it knew or should have known the alleged facts underlying this lawsuit as early as 2008 and no later than November 2014. .................................................... 23

    A.    BlueRadios knew the facts underlying its claims because it was put on notice of its alleged harms four separate times between 2008 and 2009. .................................................................. 26

          1.    BlueRadios had actual knowledge as early as December 2008. ......................................................................... 26

          2.    BlueRadios' attempts to avoid the legal consequences of these undisputed facts are meritless. ......................................... 29

    B.    BlueRadios had actual knowledge no later than November 2014. ....................................................................................34

    C.    BlueRadios should have known about the allegedly incorrect inventorship and assignment in 2009. ..................................41

II.    Tolling does not apply because BlueRadios had actual knowledge of the harm it alleges. ...........................................................42

III.    Alternatively, tolling does not apply because HBSR had no attorney-client or other special relationship with BlueRadios imposing duties of disclosure. ....................................................................44

    A.    BlueRadios cannot establish an implied attorney-client relationship under Massachusetts law. ..................................44

        1.    BlueRadios never made a concrete communication requesting representation or individualized legal advice..........46

        2.    HBSR never provided individualized legal advice in response to any request by BlueRadios. ...................................51

        3.    The Court cannot impute an attorney-client relationship contrary to Massachusetts law. ..................................53

    B.    HBSR owed no independent duty to BlueRadios. .............................59

CONCLUSION ....................................................................61

STATEMENT REGARDING ORAL ARGUMENT ............................................63

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................64

iii

# TABLE OF AUTHORITIES

## CASES

*Alves v. Cohan*,
    102 Mass. App. Ct. 1116 (2023)
    *review denied*, 492 Mass. 1102 (2023)....................................................43

*Andersen v. Lopez*,
    80 Mass. App. Ct. 813, 957 N.E.2d 726 (2011)...................................23

*Arbogast v. Pfizer, Inc.*,
    No. 23-1481, 2024 WL 4986403 (1st Cir. June 20, 2024)...................40

*Barraford v. T & N Ltd.*,
    778 F.3d 258 (1st Cir. 2015) .................................................................23

*Bowen v. Eli Lilly & Co.*,
    408 Mass. 204, 557 N.E.2d 739 (1990) ...............................................29

*Cantu v. St. Paul Companies*,
    401 Mass. 53, 514 N.E.2d 666 (1987)..................................... 21, 35, 43

*Cerqueira v. Cerqueira*,
    828 F.2d 863 (1st Cir. 1987) .................................................................47

*DaRoza v. Arter*,
    416 Mass. 377, 622 N.E.2d 604 (1993) ........................................ 46, 48

*Davalos v. Bay Watch, Inc.*,
    494 Mass. 548, 240 N.E.3d 753 (2024) ........................................ 34, 42

*DeVaux v. Am. Home Assur. Co.*,
    387 Mass. 814, 444 N.E.2d 355 (1983) . 20, 21, 38, 41, 44, 45, 46, 48, 49, 50, 51,
    53, 55

*Doe v. Creighton*,
    439 Mass. 281, 786 N.E.2d 1211 (2003) ....................................... 38, 39

*Eck v. Kellem*,
    51 Mass. App. Ct. 850, 748 N.E.2d 1047 (2001).......................... 31, 32

*Economou v. Wood*,
   95 Mass. App. Ct. 1117, 2009 WL 2427347 (2019) ............................................34

*Fessenden Sch. v. Hub Int'l Ltd.*,
   99 Mass. App. Ct. 1132, 2021 WL 2742803 (2021) ...........................................37

*Frankston v. Denniston*,
   74 Mass. App. Ct. 366, 907 N.E.2d 244 (2009) ................... 20, 32, 35, 36, 40, 51

*Gagnon v. Coombs*,
   39 Mass. App. Ct. 144, 654 N.E.2d 54 (1995) ...................................................61

*Geo. Knight & Co. v. Watson Wyatt & Co.*,
   170 F.3d 210 (1st Cir. 1999) ...............................................................................34

*Hopper v. Frank*,
   16 F.3d 92 (5th Cir. 1994) ...................................................................................44

*In re Regents of the Univ. of Cal.*,
   101 F.3d 1386 (Fed. Cir. 1996) ...........................................................................56

*In re Spalding Sports Worldwide*,
   203 F.3d 800 (Fed. Cir. 2000) .............................................................................56

*Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*,
   482 F.3d 1 (1st Cir. 2007) ........................................ 22, 46, 48, 49, 51, 52, 56, 57

*Jarosz v. Palmer*,
   436 Mass. 526, 766 N.E.2d 482 (2002) ..............................................................54

*Koe v. Mercer*,
   450 Mass. 97, 876 N.E.2d 831 (2007)................................................................29

*Levin v. Berley*,
   728 F.2d 551 (1st Cir. 1984) ................................................................. 33, 38, 39

*Lyons v. Nutt*,
   436 Mass. 244, 763 N.E.2d 1065 (2002) ......................................... 24, 27, 31, 43

*Mass. Elec. Co. v. Fletcher, Tilton & Whipple, P.C.*,
   394 Mass. 265, 475 N.E.2d 390 (1985) ..............................................................33

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
167 F. Supp. 2d 108 (D. Mass. 2001)...................................................... 49, 55, 56

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005) ...................................................................55

*Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf
Greenfield & Sacks, PC*,
736 F. Supp. 2d 353 (D. Mass. 2010)............................................................ 44, 50

*Merck Eprova AG v. ProThera, Inc.*,
670 F. Supp. 2d 201 (S.D.N.Y. 2009)..................................................................55

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*,
11 F.4th 12 (1st Cir. 2021) ...................................................................32

*Norton v. Donovan*,
No. SUCV20180091BLS1, 2018 WL 3059846
(Mass. Super. Apr. 23, 2018) ...............................................................52

*One Nat'l Bank v. Antonellis*,
80 F.3d 606 (1st Cir. 1996) .............................................................. 22, 60

*Ouellette v. Beaupre*,
977 F.3d 127 (1st Cir. 2020) .................................................... 23, 29, 35

*Patriot Gen. Life Ins. Co. v. CFC Inv. Co.*,
11 Mass. App. Ct. 857, 420 N.E.2d 918 (1981)....................................................58

*Phoung Luc v. Wyndham Mgmt. Corp.*,
496 F.3d 85 (1st Cir. 2007) ...................................................................55

*Robertson v. Gaston Snow & Ely Bartlett*,
404 Mass. 515, 536 N.E.2d 344 (1989) ........................................................ 46, 56

*Rose v. RTN Fed. Credit Union*,
1 F.4th 56 (1st Cir. 2021) ...................................................................51

*Rosen Constr. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris,
Glovsky & Popeo, P.C.*,
364 F.3d 399 (1st Cir. 2004) .................................................................36

*RTR Techs., Inc. v. Helming*,
815 F. Supp. 2d 411 (D. Mass. 2011)................................................. 24, 27, 31, 41

*Salin v. Shalgian*,
18 Mass. App. Ct. 467, 467 N.E.2d 475 (1984).....................................33

*Segrain v. Duffy*,
118 F.4th 45 (1st Cir. 2024) ...............................................................58

*Shain Inv. Co., Inc. v. Cohen*,
15 Mass. App. Ct. 4, 443 N.E.2d 126 (1982)........................................58

*Sheinkopf v. Stone*,
927 F.2d 1259 (1st Cir. 1991) ............................................. 22, 45, 52, 56

*Sierra Club v. Wagner*,
555 F.3d 21 (1st Cir. 2009) ................................................................32

*Spilios v. Cohen*,
38 Mass. App. Ct. 338, 647 N.E.2d 1218 (1995)................................... 31, 32, 33

*Spinner v. Nutt*,
417 Mass. 549, 631 N.E.2d 542 (1994) ...............................................59

*Stark v. Advanced Magnetics, Inc.*,
50 Mass. App. Ct. 226, 736 N.E.2d 434 (2000)............................... 21, 43

*Suburban Health Care, Inc. v. Executive Office of
Health & Human Servs.*,
488 Mass. 347, 173 N.E.3d 344 (2021) ...............................................23

*Sun Studs, Inc. v. Applied Theory Assocs., Inc.*,
772 F.2d 1557 (Fed. Cir. 1985) ...................................................... 54, 57

*Tocci v. Holland & Knight, LLP*,
No. 21-P-1023, 2022 WL 3129971
(Mass. App. Ct. Aug. 5, 2022) ............................................................24

*United States v. Mayendia-Blanco*,
905 F.3d 26 (1st Cir. 2018) ........................................... 43, 44, 49, 59

*Vinci v. Byers*,
65 Mass. App. Ct. 135, 837 N.E.2d 1140 (2005)..................................25

*Williams v. Ely*,
  423 Mass. 467, 668 N.E.2d 799 (1996) ................................ 20, 24, 26, 39, 40, 46

*Wise v. Hubbard*,
  769 F.2d 1 (1st Cir. 1985) ....................................................................... 21, 41, 42

*Wright v. Rinaldo*,
  761 N.W.2d 114 (Mich. App. 2008) .................................................................56

## STATUTES

Mass. Gen. L. c. 93A .................................................................................18

Mass. Gen. L. c. 260 § 4 ...........................................................................23

Mass. Gen. L. c. 260 § 5A .........................................................................24

## RULES

Mass. R. Prof. C. 1.6 ......................................................................... 22, 60

Mass. R. Prof. C. 1.7 ...............................................................................60

## OTHER AUTHORITIES

10A Fed. Prac. & Proc. Civ. § 2723 (4th ed.)..........................................48

## INTRODUCTION

This legal-malpractice lawsuit involves the straightforward application of Massachusetts' three-year statute of limitations. BlueRadios claims Appellees (collectively, "HBSR") owed duties as BlueRadios' counsel and breached those duties by omitting BlueRadios employees as inventors from various patent applications HBSR filed between 2007 and 2009 and by assigning certain applications to HBSR's long-time client, Kopin Corporation. To be timely, BlueRadios' claims must have accrued on or after December 5, 2014. The district court correctly concluded they accrued long before then, making this lawsuit untimely under controlling Massachusetts law. This ruling is based on undisputed documentary evidence (and accompanying testimonial admissions) showing BlueRadios had actual knowledge of the conduct it alleges caused it harm as early as 2008 and 2009, and no later than November 2014. These dispositive, undisputed facts—namely, BlueRadios' actual knowledge of the conduct and harm at issue in this case in 2008, 2009, and, at the latest, 2014—likewise disposes of this appeal.

In 2008 and 2009, HBSR sent BlueRadios certain of the filed patent applications that BlueRadios alleges caused it harm. BlueRadios not only received the applications but closely reviewed them, leading its President and CEO to say in a December 2008 internal email that HBSR's identification of inventors on the

1

applications was "███████████," and to ask whether BlueRadios should send a "█████████" to HBSR demanding correction (which it never did).

In 2014—still before the cut-off date for the applicable limitations period—BlueRadios researched the patent filings, was unable to find its employees' names on them, and instructed its own patent counsel to research further. BlueRadios' counsel completed that research in November 2014, creating a document that same month memorializing his findings that HBSR had removed BlueRadios inventors from certain applications, abandoned other applications, and identified Kopin as the sole assignee—the same conduct that forms the basis of this lawsuit.

Based on these and other undisputed facts demonstrating that BlueRadios knew about its alleged inventorship and assignment harms *years* before the cut-off date, and applying black-letter Massachusetts law, the district court granted summary judgment for HBSR. The court rejected BlueRadios' argument that the continuing-representation and fraudulent-concealment doctrines should toll the limitations period, because neither doctrine can apply where, as here, the plaintiff has actual knowledge of the alleged harm it suffered. Even if BlueRadios had lacked actual knowledge, BlueRadios at least *should have known* of its alleged harm, which was enough to trigger accrual because HBSR had no attorney-client or other special relationship with BlueRadios imposing upon HBSR a duty of disclosure.

BlueRadios attempts to overturn those rulings by misrepresenting the record and urging this Court to apply inapposite legal principles. For example, BlueRadios pronounces that "[t]his appeal concerns a joint venture" and characterizes its agreement with Kopin as the "Joint Venture Agreement." *E.g.*, App.Br. 3, 8. Yet while BlueRadios raised a joint-venture argument in the district court, it does not on appeal—making the issue irrelevant. Nor would such an argument, if actually presented, have merit. Under Massachusetts law, a joint venture requires "a right to share in profits" and a "duty to share in losses"— neither of which exists here. Indeed, a Colorado court already held that BlueRadios' agreement with Kopin was ***not*** a joint venture. App.Vol.4_A2014(¶84). Likewise, BlueRadios contends on appeal that it sought "individualized legal advice" from HBSR, App.Br. 36, despite having ***admitted*** below that it never sought such advice, App.Vol.4_A1866-67(¶30). BlueRadios also relies largely on cases that do not apply (and indeed contradict) Massachusetts law, when the issues on appeal are governed exclusively by Massachusetts legal principles.

BlueRadios' misrepresentations and misdirection are insufficient to overturn summary judgment and are irrelevant. Even if HBSR had an attorney-client relationship with or otherwise owed duties to BlueRadios (which it did not),

BlueRadios' actual knowledge of its alleged harm before the cut-off date is dispositive of this appeal. The Court should affirm.

## STATEMENT OF ISSUES

I. Whether BlueRadios knew or should have known of the conduct it alleges caused its damages more than three years before it entered a tolling agreement.

II. Whether BlueRadios' actual knowledge of the conduct it alleges caused its damages precludes any continuing-representation or fraudulent-concealment tolling of the limitations period.

III. Alternatively, whether BlueRadios' tolling argument fails because BlueRadios cannot establish an attorney-client or other special relationship creating a duty of disclosure.

## STATEMENT OF THE CASE

### A.    Kopin introduced BlueRadios to "Kopin's IP law firm," HBSR.

Kopin Corporation is a Massachusetts corporation that designs and manufactures micro-display technology. App.Vol.4_A1856-57(¶1).[1] Since the 1990s, HBSR has prosecuted patent applications on Kopin's behalf. App.Vol.4_A1857(¶2); App.Vol.3_A1386(¶6).

In 2006, Kopin began developing a device it would call "Golden-i": a head-wearable "███████████████████████████" that incorporates certain wireless technologies, including Bluetooth and Wi-Fi. App.Vol.12_A6327(¶6). Kopin asked HBSR to begin working on Golden-i patent applications in December 2006. App.Vol.4_A1859(¶8). HBSR filed one application and drafted three more by April 5, 2007. *Id.*

In June 2007, Kopin and BlueRadios entered a contract under which BlueRadios agreed to help develop certain wireless technology for Golden-i. App.Vol.4_A1860(¶14); App.Vol.10_A5105-11. Under the contract, Kopin retained exclusive control of the patent process: "█████████████████████ ████████████████████████████████████████████"

---

[1] Citations to the Joint Appendix use the following format: App.Vol.[Volume#]_[Page#], and include transcript line or paragraph numbers where necessary, *e.g.*, App.Vol.5_2156(18-25). Citations to the Addendum use the following format: ADD[Page#].

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████" App.Vol.12_A6330(¶15.b); App.Vol.10_A5109. The contract did not

provide for sharing profits, losses, or revenue between Kopin and BlueRadios.

App.Vol.12_A6331-32(¶16); App.Vol.10_A5105-11. Instead, Kopin agreed to pay

BlueRadios ████████████████████████████████████████

███████████████████████████████████████████████████

████████████████.[2] App.Vol.12_A6329-30(¶15.a); App.Vol.10_A5108-09.

Two months earlier, on April 11, 2007, Jeffrey Jacobsen, Kopin's employee

tasked with managing Golden-i development, told HBSR about Kopin's plan to

work with BlueRadios. App.Vol.4_A1864-65(¶24). Later that month, Jacobsen

emailed Mark Kramer, BlueRadios' President and CEO, suggesting that "██████

████████████████████" speak to someone at BlueRadios.

App.Vol.12_A6334(¶26). Kramer understood that HBSR represented Kopin: he

responded that BlueRadios could "███████████████" about "███████████████

---

[2] Kopin and BlueRadios executed a contract addendum in 2008, under which
BlueRadios █████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████ App.Vol.12_A6332-33(¶21);
App.Vol.10_A5113.

██████████████████████████████████████████████ ”

App.Vol.12_A6334(¶26) (emphasis added).

Jacobsen introduced the larger BlueRadios team to HBSR in June 2007. He wrote to Kramer and Wilfred Tucker, BlueRadios' Chief Technology Officer, informing them that "███████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ” App.Vol.12_A6334(¶27) (emphasis added). On August 16, 2007, Jacobsen followed up with another email to BlueRadios, again identifying Cass as "████ ██████████████████████████████████████████████ ██████ ” App.Vol.12_A6334-35(¶28) (emphasis added). At Kopin's direction, HBSR kept working on Golden-i patent applications, including some involving BlueRadios inventors and contributions. App.Vol.4_A1866(¶29).

### B.  BlueRadios learned the facts underlying this lawsuit in 2008 and 2009.

Between January 2008 and January 2009, HBSR filed a handful of Golden-i patent applications including BlueRadios employees among the inventors. App.Vol.4_A1872(¶42). During that process, BlueRadios learned of the conduct that it now alleges caused its damages.[3]

---

[3] The list that follows is not a complete list of all applications HBSR filed. It includes only some of those applications relied on by the district court in granting

*'090 Application.* In its complaint, BlueRadios alleges that HBSR "failed to name" BlueRadios employees as inventors in U.S. Provisional Patent Application No. 61/010,090 (the '090 Application). App.Vol.4_A1879(¶57.a); App.Vol.1_A76(¶¶176, 178). On January 16, 2008, HBSR sent BlueRadios a filed copy of that application, which named only one inventor: Chris Parkinson, a Kopin contractor. App.Vol.4_A1876-77(¶¶48-50).

BlueRadios recognized that the omission of BlueRadios employees as inventors in that patent application was, in its view, incorrect. On December 31, 2008, after reviewing a draft of a later, related patent application, Kramer emailed Tucker complaining about the omission:



App.Vol.11_A5453 (emphasis added); *see also* App.Br. 59-60. He said that the

" ████████████████████████████████████████████████████████

████ " App.Vol.12_A6352(¶61); App.Vol.11_A5453.

---

summary judgment. Other applications and patents establishing BlueRadios' actual knowledge of its alleged harm long before the limitations cut-off date are discussed below.

**'462 Application.** BlueRadios also alleges in its complaint that HBSR wrongly "named Kopin as the sole assignee of" U.S. Utility Application No. 12/152,462 (the '462 Application) to help Kopin "obtain ownership of" the application "to the exclusion of" BlueRadios. App.Vol.4_A1879-80(¶58.a); App.Vol.1_A87(¶235), A88(¶236). BlueRadios knew about that alleged incorrect assignment in 2008 as well.

On May 14, 2008, HBSR filed the '462 Application naming both Kopin inventors (Jacobsen, Stephen Pombo, and Parkinson) and BlueRadios inventors (Tucker and John Sample). App.Vol.4_A2033(¶21). On July 25, 2008, HBSR's Gerald Kazanjian sent a letter to Kopin, copying BlueRadios' Tucker and Sample, asking the named inventors of the '462 Application to sign a form stating they had assigned their rights in the application to Kopin. App.Vol.12_A6349(¶58.b). Moreover, on December 22, 2008, HBSR's Thibodeau sent BlueRadios' Tucker a draft of another application, which included language stating that the '462 Application was assigned to Kopin. App.Vol.12_A6349(¶58.d). Tucker read and acknowledged that language; he sent an email quoting it and asking for a copy of the '462 Application. App.Vol.4_A1881(¶58.e). HBSR replied, attaching the requested copy for Tucker's review. *Id.*

**'627 Application.** In its complaint, BlueRadios alleges HBSR wrongly named Kopin's Jacobsen as an inventor on, and omitted BlueRadios' Randall

10

Jones from, U.S. Utility Application No. 12/348,627 (the '627 Application), "to assist Kopin in attempting to obtain ownership rights in the '627 Application and any resulting patents, to the detriment of BlueRadios." App.Vol.4_A1881(¶60.a); App.Vol.1_A84(¶222), A85(¶225). Once again, BlueRadios knew about that in 2009.

On March 27, 2009, Tucker reviewed the filed version of the '627 Application, which included the allegedly incorrect inventorship. App.Vol.4_A1881-82(¶60.b). That same day, Tucker forwarded that application to Kramer, who admittedly knew upon receiving it that Jacobsen was named as an inventor and Jones was not. App.Vol.4_A1882(¶60.c).

On April 21, 2009, BlueRadios' Kramer sent Kopin an executed Declaration for Patent Application for the '627 Application. App.Vol.4_A1882(¶60.d). The declaration, which Kramer, Sample, and Tucker signed under penalty of perjury, referenced the allegedly incorrect inventorship. *Id.*; App.Vol.11_A5435. On June 26, 2009, Kopin sent an assignment for the '627 Application to Kramer, Tucker, and Sample. App.Vol.4_A1882-83(¶60.e). The email and the attached assignment again reflected the allegedly incorrect inventorship. *Id.*

***'646 Application.*** BlueRadios alleges in its complaint that HBSR incorrectly named Kopin as the sole assignee of U.S. Utility Application No. 12/348,646 (the '646 Application). App.Vol.1_A89(¶245). BlueRadios knew about that assignment

11

in 2009. On March 27, 2009, after BlueRadios' Tucker asked Kopin's Jacobsen for

filed copies of certain patent applications, HBSR's Kazanjian sent Tucker,

Jacobsen, and Parkinson filed copies of the '627 and '646 Applications.

App.Vol.4_A1881(¶59.a). The '646 Application attached to Kazanjian's email

identified "████████████"—and not BlueRadios—as the assignee for

publication purposes. App.Vol.12_A6350(¶59.a).

> ***Publishing.*** These patent applications and their file histories were also
>
> published by the USPTO, meaning they were made publicly available for anyone
>
> to view. App.Vol.4_A1875-76(¶¶46-47).

- The '462 Application was published (without listing any BlueRadios inventors and listing Kopin as assignee) and its file history was made public on May 7, 2009, App.Vol.4_A1875(¶44.a);

- The '627 Application was published (listing Jacobsen and not Jones as an inventor) and its file history was made public on August 20, 2009, App.Vol.4_A1875(¶44.b), and issued as a patent in January 2013, App.Vol.4_A2038(¶38); and

- The '646 Application was published (listing Kopin as assignee) and its file history was made public on October 8, 2009, App.Vol.4_A1875(¶44.c).

### C.    In 2009, BlueRadios' relationship with Kopin broke down and BlueRadios ceased communicating with HBSR.

In July 2009, Kopin and BlueRadios' relationship broke down, and Kopin

decided BlueRadios would no longer work on Golden-i. App.Vol.4_A1885(¶66).

BlueRadios' last direct communication with HBSR (a communication on

which Kopin was copied) occurred a month earlier, on June 16, 2009.

App.Vol.4_A1868(¶32). During the short period in which HBSR and BlueRadios communicated, BlueRadios referred to HBSR as "███████████████," and as "███████." App.Vol.12_A6338-39(¶37). Throughout that time, most communications between BlueRadios and HBSR were not direct communications, but instead were made through Kopin's Jacobsen. App.Vol.3_A1409(¶64). BlueRadios never shared any confidential information with HBSR that it did not also share with Kopin. App.Vol.4_A1869(¶35). Nor did it have an engagement letter or fee agreement with HBSR or pay HBSR for any legal services. App.Vol.4_A1870-71(¶39). And, most importantly, BlueRadios admittedly "did not make individual requests for HBSR to perform discreet [*sic*] tasks in fulfilment of its role." App.Vol.4_A1866-67(¶30).

### D. BlueRadios' patent attorney investigated HBSR's work, and learned of BlueRadios' alleged harm, in November 2014.

In August 2014, BlueRadios' Kramer contacted Kopin (but not HBSR) to say BlueRadios had been approached about an acquisition and asked about "the past IP." App.Vol.4_A1887(¶73). Jacobsen responded that he "█████████ ████████" which "███████" Kramer and "█████████████████ █████████████████████████████" App.Vol.13_A6657(¶58).

BlueRadios researched Golden-i patent filings with the USPTO. *Id.* BlueRadios "search[ed] and … couldn't find [its employees'] names on patents that we were claimed to be put on from Kopin." App.Vol.5_A2156(17-25). As a

result, BlueRadios instructed its patent attorney, James Klobucar,[4] to "find the history of what happened to the[] patents[.]" App.Vol.5_A2157(1-5).

On November 14, 2014, Kramer emailed Klobucar with instructions to



." App.Vol.16_A8370. That same day, Klobucar billed to a matter titled "▮▮▮▮" for a "▮▮▮▮▮▮" and "▮▮▮▮▮▮▮" App.Vol.4_A1887(¶74.b); App.Vol.11_A5515. Throughout the rest of November, Klobucar and a colleague billed to that same matter for reviewing patents and patent assignments, "▮▮▮▮▮▮▮▮▮," reviewing "▮▮▮▮ ▮▮▮▮▮▮," and "▮▮▮▮▮▮▮▮." App.Vol.12_A6357(¶74.c). When Klobucar performed his search, nobody told him that anyone from BlueRadios believed HBSR had represented BlueRadios. App.Vol.5_A2502(14)-03(21).

Klobucar downloaded and saved to his file certain documents during his search and, on November 26, 2014, created a list of the patent applications that he

---

[4] BlueRadios first hired Klobucar as a contract patent attorney in 2011. App.Vol.4_A1886-87(¶71). In that capacity, Klobucar prepared and filed patent applications and conducted patentability assessments for BlueRadios. *Id.*

identified. App.Vol.16_A8367(¶6), A8380 (Klobucar's list). Klobucar's file and list include many of the same alleged harms underlying this lawsuit.

***'462 Application.*** Klobucar found and saved (among other things) the May 7, 2009 patent application publication naming only Kopin as the assignee, App.Vol.5_A2486(24)-89(3); App.Vol.14_A7409. He noted that BlueRadios' Tucker and Sample initially had been listed as inventors, but the application "█████████████" Kopin inventors:



App.Vol.16_A8380.

***'646 Application.*** Klobucar found and saved the October 8, 2009 patent application publication naming Kopin (and not BlueRadios) as the assignee, App.Vol.5_A2471(5)-72(1), A2473(18)-74(21), A2475(3-13), A2496(15)-97(8); App.Vol.14_A7306; and a document HBSR filed in September 2012 asking that BlueRadios' Tucker and Sample be deleted as inventors as a result of amendments to the application's claims, App.Vol.5_A2475(14)-77(24), A2478(5-11), A2478(23)-81(24); App.Vol.14_A7336-37. He noted that Tucker and Sample had been deleted as inventors:



App.Vol.16_A8380

***'627 Application.*** Klobucar found the patent that issued from this

application naming BlueRadios' Kramer, Sample, and Tucker (and not Jones) and

Kopin's Jacobsen as inventors. App.Vol.5_A2490(3-19), A2491(3)-93(1),

A2496(2-14). He noted the inventorship of the issued patent:



App.Vol.16_A8380.

***'147 PCT.*** HBSR had filed an international patent application,

PCT/US2008/006147 (the '147 PCT), naming the same inventors it had named in

the '462 Application, including BlueRadios' Tucker and Sample.

App.Vol.4_A1873(¶42.c). HBSR also filed four foreign applications based on the

'147 PCT. App.Vol.4_A1873-74(¶42.d). BlueRadios alleges that HBSR

"abandoned the '147 PCT to aid and assist Kopin's efforts to obtain sole ownership

of patent applications [HBSR] filed in the United States … to the detriment of

BlueRadios." App.Vol.1_A94(¶276). Klobucar found that the '147 PCT and

related national-phase applications had been abandoned or allowed to expire, App.Vol.5_2498(13)-500(12), and noted these facts in his list:



App.Vol.16_A8380.

Klobucar sent BlueRadios invoices dated December 3, 2014, reflecting the hourly fees charged for his law firm's services related to the HBSR patent filings investigation, which BlueRadios paid. App.Vol.4_A1889-90(¶75).

### E. BlueRadios sued Kopin in Colorado in 2016, asserting for the first time that HBSR represented BlueRadios, and later sued HBSR in Massachusetts.

In August 2016, BlueRadios sued Kopin in Colorado federal court. App.Vol.4_A1892(¶83). After HBSR appeared on Kopin's behalf, BlueRadios moved to disqualify HBSR, stating—for the first time—that HBSR not only represented Kopin, but BlueRadios too. App.Vol.4_A1893(¶86). That case proceeded to trial, where the jury found in favor of BlueRadios. The parties await rulings on post-trial motions.

BlueRadios entered into a tolling agreement with HBSR on December 5, 2017, and filed this lawsuit in March 2021. App.Vol.4_A1894(¶88). In its complaint, BlueRadios asserts claims for legal malpractice, breach of fiduciary duty based on a confidential relationship, aiding and abetting breach of fiduciary duty, fraudulent nondisclosure or fraudulent concealment, aiding and abetting fraudulent concealment, conspiracy,[5] and a violation of Mass. Gen. L. c. 93A. App.Vol.1_A120-37. Those claims are based on allegations that BlueRadios had an attorney-client relationship with HBSR beginning in 2007 through "at least 2016," and HBSR breached the standard of care and duties to BlueRadios through various actions HBSR took when filing and prosecuting certain patent applications. App.Vol.4_A1894(¶89).

After discovery, BlueRadios and HBSR cross-moved for summary judgment. The district court granted HBSR's motion. After reviewing the undisputed material facts, including BlueRadios' own contemporaneous emails, the court ruled that BlueRadios knew about the appreciable harm it had suffered as early as 2008 and 2009, when it received—and complained about—the allegedly improper patent applications. ADD17-21. The court separately determined that

---

[5] The district court granted HBSR's motion to dismiss the claim for conspiracy against all defendants, and the claims for legal malpractice and breach of fiduciary duty based on a confidential relationship as against Appellee Joshua Matloff. App.Vol.1_A332. BlueRadios does not appeal that order.

BlueRadios knew about the appreciable harm it had suffered no later than November 2014, when it directed its attorney, Klobucar, to investigate the patent applications. ADD23-26. Finally, the court ruled that, at the very least, BlueRadios should have known about the appreciable harm it had incurred when the applications were published beginning in 2009. ADD22.

Because BlueRadios knew about the harm it had incurred, the district court ruled that BlueRadios' claims were not saved by the continuing-representation or fraudulent-concealment tolling doctrines. ADD27-32. That basis alone supported the court's judgment for HBSR. But in the interest of "completeness," the court also analyzed whether the parties entered an attorney-client relationship. It was "undisputed that BlueRadios did not make any individual requests for [HBSR] to perform discreet [*sic*] tasks, BlueRadios was not invoiced by the Law Firm for any legal services, and did not voice that it considered the Law Firm to be its counsel prior to the Colorado lawsuit where it sought to disqualify the Law Firm from representing Kopin." ADD36-37. As a result, the court determined BlueRadios could not prove it had an attorney-client relationship with HBSR. *Id.*

BlueRadios appeals.

## SUMMARY OF ARGUMENT

I. BlueRadios' claims are untimely. Under Massachusetts law, a claim accrues when a plaintiff "knows or reasonably should know that he or she has

sustained appreciable harm." *Williams v. Ely*, 423 Mass. 467, 473, 668 N.E.2d 799 (1996). To be timely, BlueRadios' claims had to accrue on or after December 5, 2014. But the undisputed evidence shows they accrued long before, in 2008 and 2009, when HBSR sent BlueRadios the very patent applications that now form the basis of this lawsuit, based on allegations that the applications improperly omitted BlueRadios inventors or assigned rights to Kopin. These alleged errors were apparent on the applications' face, causing BlueRadios to conclude at the time that HBSR's conduct was "███████."

BlueRadios received this information again in November 2014, when its patent counsel, Klobucar, investigated the publicly available patent filings and separately identified the alleged errors. Because Klobucar (the agent) knew then about the alleged harm suffered by BlueRadios, BlueRadios (the principal) did too. *DeVaux v. Am. Home Assur. Co*., 387 Mass. 814, 818, 444 N.E.2d 355 (1983). Klobucar's attorney fees would, in any event, independently trigger accrual in November 2014. *Frankston v. Denniston*, 74 Mass. App. Ct. 366, 375, 907 N.E.2d 244 (2009) (cause of action accrued when plaintiff incurred "additional attorneys' fees and expenses required to ameliorate the harm caused by [the attorney's] alleged error").

Setting aside BlueRadios' actual knowledge, BlueRadios at minimum should have known about the facts underlying its claims in 2009, when the allegedly

defective patent applications and their file histories were published. *Wise v. Hubbard*, 769 F.2d 1, 2-3 (1st Cir. 1985).

II. Neither the continuing-representation doctrine nor the fraudulent-concealment doctrine tolls the limitations period because neither doctrine applies where—as here—the plaintiff had actual knowledge of its alleged harm. *Cantu v. St. Paul Companies*, 401 Mass. 53, 58, 514 N.E.2d 666 (1987) (continuing-representation doctrine). *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 233-34, 736 N.E.2d 434 (2000) (fraudulent-concealment doctrine).

III. If BlueRadios lacked actual knowledge (it did not) and merely should have known, tolling still does not apply because HBSR had no attorney-client or other special relationship with BlueRadios imposing a duty of disclosure. BlueRadios admittedly had no express attorney-client relationship with HBSR, App.Br. 45, so argues that such a relationship can be implied. But Massachusetts law recognizes an implied attorney-client relationship only where, among other things: "(1) a person seeks advice or assistance from an attorney, … and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *DeVaux*, 387 Mass. at 818. BlueRadios cannot establish either prong.

The first prong "require[s] ***concrete*** communication by the plaintiff requesting that the attorney represent him, or explicitly seeking ***individualized***

legal advisement." *Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*, 482 F.3d 1, 8 (1st Cir. 2007) (emphasis added). BlueRadios admitted to the district court that it never requested individualized legal advice or representation from HBSR, App.Vol.4_A1866-67(¶30)—an admission that is fatal to its argument.

The third prong requires BlueRadios to prove either (1) HBSR agreed to or actually did provide legal services that it requested, or (2) it reasonably relied on HBSR, which was "aware of such reliance" but "did nothing to negate it." *Int'l Strategies Grp*, 482 F.3d at 10. Neither test can be satisfied. The first test fails because there are no facts showing HBSR provided legal services at BlueRadios' request. The second test fails because it is undisputed that BlueRadios' "professed reliance" on HBSR was "uncommunicated," and HBSR was not "actually aware" of it. *Sheinkopf v. Stone*, 927 F.2d 1259, 1268 (1st Cir. 1991).

Nor did BlueRadios have any other special relationship with HBSR entitling it to tolling. On the contrary, Massachusetts courts refuse to find such a relationship exists if to do so would even potentially create conflicting duties on the part of the lawyer. *One Nat'l Bank v. Antonellis*, 80 F.3d 606, 609-10 (1st Cir. 1996). Here, if HBSR owed BlueRadios a duty of disclosure as BlueRadios claims, that would conflict with HBSR's duty of confidentiality to Kopin. Mass. R. Prof. C. 1.6.

## ARGUMENT

The Court reviews an order granting summary judgment *de novo*. *Barraford v. T & N Ltd.*, 778 F.3d 258, 263 (1st Cir. 2015). A defendant moving for summary judgment on the statute of limitations must offer "conclusive" evidence that the statute has run. *Ouellette v. Beaupre*, 977 F.3d 127, 134 (1st Cir. 2020). "If the defendant produces such conclusive evidence, the burden shifts to the plaintiff to establish that the statute of limitations does not apply." *Id.* at 135 (citation and quotation marks omitted). BlueRadios fails to meet that burden here—indeed, its brief does not even address this dispositive issue until 16 pages into the argument.

I. **BlueRadios' claims are time-barred because it knew or should have known the alleged facts underlying this lawsuit as early as 2008 and no later than November 2014.**

Statutes of limitations are grounded in important policy concerns, including the unfairness of having to defend accusations after evidence is lost to time, *Suburban Health Care, Inc. v. Executive Office of Health & Human Servs.*, 488 Mass. 347, 354, 173 N.E.3d 344 (2021), and the need for finality so that parties do not live under an indefinite threat of litigation, *Andersen v. Lopez*, 80 Mass. App. Ct. 813, 816, 957 N.E.2d 726 (2011) (citation omitted). Massachusetts applies a three-year statute of limitations to BlueRadios' claims. Mass. Gen. L. c. 260 § 4 (three-year limitations period for legal malpractice, fraudulent concealment, breach

of fiduciary duty, and aiding and abetting).[6] BlueRadios and HBSR entered a

tolling agreement on December 5, 2017. ADD14; App.Br. 20. Thus, any claim that

accrued before December 5, 2014, is barred by the statute of limitations.

Under Massachusetts law, a claim accrues when a plaintiff "knows or

reasonably should know that he or she has sustained appreciable harm." *Williams*,

423 Mass. at 473; *see also RTR Techs., Inc. v. Helming*, 815 F. Supp. 2d 411, 421

(D. Mass. 2011) ("In malpractice cases alleging the negligent provision of

professional advice, expressions of misgiving are compelling proof that the

plaintiff was on notice."). Complete knowledge of every facet of the claim is not

required; for example, a plaintiff "need not know that his lawyer was negligent for

the cause of action to accrue." *Lyons v. Nutt*, 436 Mass. 244, 249, 763 N.E.2d 1065

(2002). Although the question when the claim accrued typically presents a question

of fact, where, as here, the facts about discovery of harm are undisputed, the

---

[6] BlueRadios also brought a claim under Chapter 93A, which typically has a four-year statute of limitations. Mass. Gen. L. c. 260 § 5A. But, as the district court ruled, when (as here) a Chapter 93A claim merely recasts a party's malpractice or breach of fiduciary duty claims, Massachusetts courts apply a three-year statute of limitations. *Tocci v. Holland & Knight, LLP*, No. 21-P-1023, 2022 WL 3129971, at *2 (Mass. App. Ct. Aug. 5, 2022) (unpublished opinion); *see* ADD16 n.12. BlueRadios does not challenge this ruling on appeal. (The district court also found that even if the four-year limitations period applied, BlueRadios' Chapter 93A claim still would have been untimely. *Id.*)

question may be decided as matter of law. *Vinci v. Byers*, 65 Mass. App. Ct. 135, 1145, 837 N.E.2d 1140 (2005).

As the district court correctly ruled, BlueRadios' claims are untimely, because BlueRadios knew or should have known about its alleged harm before December 5, 2014. ADD16, 26-27. In reaching its decision, the court relied on three separate undisputed facts, any one of which is dispositive:

- BlueRadios *knew* the facts underlying its claims because it learned them in four separate instances between 2008 and 2009. ADD17-21.

- BlueRadios *knew* the facts underlying its claims because, in November 2014, BlueRadios grew concerned about the patent applications HBSR filed and had its own patent counsel investigate them, incurring legal fees. ADD23-37.

- BlueRadios also ***should have known*** about the facts underlying its claims because, beginning in 2009, the patent applications that BlueRadios now alleges are flawed were published and publicly available, and no tolling doctrine applies. ADD22.

To successfully challenge the district court's statute-of-limitations ruling, BlueRadios must establish that the court erred in ***every one*** of those determinations. Put differently, if the district court was right in even one of the bases upon which it granted summary judgment, then this Court should affirm.

### A.    BlueRadios knew the facts underlying its claims because it was put on notice of its alleged harms four separate times between 2008 and 2009.

#### 1.    BlueRadios had actual knowledge as early as December 2008.

As the district court correctly recognized, BlueRadios was put on notice of the appreciable harm underlying its claims on at least four separate instances between 2008 and 2009—making BlueRadios' claims untimely. *Williams*, 423 Mass. at 473.

**December 2008: The '090 Application.** BlueRadios was first put on notice in 2008. In January 2008, HBSR sent a copy of the '090 patent application to BlueRadios, which listed only Parkinson as an inventor. App.Vol.4_A1876-77(¶50). Kramer was sent a related, updated application in December 2008, and noticed that the '090 Application listed only Parkinson as the inventor and not anyone from BlueRadios, even though Kramer believed BlueRadios employees should be named. App.Vol.11_A5453. Kramer understood that to be appreciable harm; he determined that leaving BlueRadios inventors off the application was "████████████" because the invention was the result of "████████████ ████████████," and he considered sending a "████████" to HBSR about the issue. *Id.* That allegedly incorrect inventorship is one of the specific harms asserted in BlueRadios' complaint. App.Vol.1_A76(¶180) ("[HBSR] named only Parkinson as the inventor in, and omitted BlueRadios employees from, the '090 Provisional

Application to assist Kopin in attempting to obtain sole ownership of the technology disclosed … to the detriment of BlueRadios."). And Kramer's "███████" email is just the sort of "expression[] of misgiving" that is "compelling proof that [BlueRadios] was on notice," *RTR Techs.*, 815 F. Supp. 2d at 421; *see also Lyons*, 436 Mass. at 247-48 (claims accrued when plaintiff realized lawyers "didn't know what they were doing").

**December 2008: The '462 Application.** In December 2008, HBSR sent a copy of the '627 Application to Tucker. App.Vol.12_A6349(¶58.d). Tucker noticed that the '627 Application stated the '462 Application was assigned to Kopin, so he emailed HBSR seeking a copy of the '462 Application. *Id.* HBSR sent him the requested copy, showing Kopin as the sole assignee. App.Vol.4_A1881(¶58.e). That email put BlueRadios on notice of the allegedly faulty assignment of the '462 Application—another of the harms BlueRadios alleges in its complaint. App.Vol.1_A87(¶235) ("[HBSR] incorrectly named Kopin as the sole assignee of the '462 Application, despite knowledge that BlueRadios' employees had assigned their inventive rights to BlueRadios.").

**March through April 2009: The '627 Application.** BlueRadios was again put on notice of appreciable harm on March 27, 2009, when HBSR sent BlueRadios a filed copy of the '627 Application. App.Vol.4_A1881-82(¶60.b-c). That application listed BlueRadios' Kramer, Sample, and Tucker (but not Jones)

and Kopin's Jacobsen as inventors. *Id.* During discovery, Kramer admitted that he knew, upon BlueRadios receiving the '627 Application, that Jacobsen was listed as an inventor and Jones was not. App.Vol.4_A1882(¶60.c). Just one month later, Kramer, Sample, and Tucker all signed a declaration listing them and Jacobsen as joint inventors of the '627 Application. App.Vol.4_A1882(¶60.d). Once again, that alleged harm was included in BlueRadios' complaint. App.Vol.1_A84(¶222) ("Jacobsen … should not have been named as an inventor on, the '627 Application. Likewise, Jones properly should have been named as an inventor on the '627 Application."); App.Vol.1_A85(¶225) ("[HBSR] named Jacobsen as an inventor in the '627 Application … to the detriment of BlueRadios.").

**March 2009: The '646 Application.** Finally, on March 27 2009, HBSR emailed Tucker a filed copy of the '646 Application, which named Kopin, and not BlueRadios, as the assignee. App.Vol.12_A6350(¶59.a). As with the others, BlueRadios included that harm in its complaint. App.Vol.1_A89(¶245) ("[T]he Law Firm incorrectly named Kopin as the sole assignee of the '646 Application.").

* * *

With each of those communications, BlueRadios was put on notice of, and acquired actual knowledge of, the facts underlying this lawsuit and, in particular, two of the appreciable harms it alleges: incorrect inventorship and improper assignment. "Reasonable notice that a particular product or a particular act of

another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations," *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 210, 557 N.E.2d 739 (1990), and "the discovery rule does not grant plaintiffs the option of ignoring connections once they have been made aware of them," *Koe v. Mercer*, 450 Mass. 97, 102, 876 N.E.2d 831 (2007). Yet despite being put on notice, BlueRadios waited eight years to enter a tolling agreement with HBSR.

### 2.    BlueRadios' attempts to avoid the legal consequences of these undisputed facts are meritless.

On appeal, BlueRadios does not actually dispute any of the facts the district court relied on in ruling that BlueRadios knew or should have known about its claims. BlueRadios thus cannot meet its burden to establish that the statute of limitations does not apply. *Ouellette*, 977 F.3d at 134.

Instead, BlueRadios argues that, as a matter of law, an error in inventorship on patent applications does not amount to the appreciable harm necessary to cause a claim to accrue. App.Br. 47-52. With two exceptions discussed below that actually do apply Massachusetts law, the cases BlueRadios cites in support of this argument apply non-Massachusetts law, arise in dissimilar disputes (*i.e.*, cases seeking to correct inventorship or claiming infringement, trade-secret misappropriation, or breach of contract), and are thus irrelevant. The district court recognized this and further reasoned that BlueRadios' argument cannot be squared

29

with BlueRadios' claims, which are based in part on alleged errors in inventorship—errors BlueRadios knew of as early as 2008 and 2009. ADD19 n.13. The court noted, for example, that "[a]lthough BlueRadios claims that the '090 Application cannot serve as a basis for accrual because it was a provisional patent [application] and therefore incapable of producing harm, D. 244 at 6-7, this argument is unavailing as BlueRadios has brought claims … based on inconsistencies in the '090 Application." *Id.*

BlueRadios' arguments that claims for inventorship accrue only when a patent issues, that the USPTO can correct inventorship, and that errors in provisional patent applications cause no limitations-triggering injury, App.Br. 48-49, fail for those same reasons. They too wrongly assume that future benefits from lost intellectual-property rights have no present value. BlueRadios ***knew*** its employees had been omitted as inventors, App.Vol.11_A5453, which injury affected BlueRadios' intellectual-property ownership and valuation when the omission occurred—precisely why Kramer called HBSR's conduct "▮▮▮▮▮▮" and considered sending HBSR a "▮▮▮▮▮▮," *id.* Indeed, if the applications themselves were valueless, BlueRadios would not have hired Klobucar to investigate them. *See supra* at 13-14.

BlueRadios cannot have it both ways. It cannot be true both that HBSR is liable for misstating inventorship on patent applications and that those same

misstatements nonetheless could not produce harm sufficient to put BlueRadios on notice of its claims. Again, Kramer's " ███ " statement, *id.*, is an "expression[] of misgiving" that is "compelling proof that [BlueRadios] was on notice," *RTR Techs.*, 815 F. Supp. 2d at 421; *see also Lyons*, 436 Mass. at 247-48.

In any case, even if BlueRadios were correct and ***inventorship*** issues on patent ***applications*** cannot cause appreciable harm, BlueRadios does not make the same argument about issued ***patents***, and Klobucar discovered the inventorship in an issued patent that BlueRadios claims is incorrect. *Supra* at 16 (discussing the '627 Application and resulting patent). Similarly, BlueRadios does not make the same argument about improper ***assignment***, which also is central to BlueRadios' claims. *E.g.*, App.Vol.1_A89(¶245) ("[T]he Law Firm incorrectly named Kopin as the sole assignee of the '646 Application.").

BlueRadios also cites two cases—*Eck v. Kellem* and *Spilios v. Cohen*—to argue that an attorney's defectively drafted document does not injure a plaintiff, and a claim for the defective drafting does not accrue, until the document is enforced against the plaintiff. App.Br. 50, 54-58. BlueRadios relatedly argues that the contents of the defectively drafted document are insufficient to put the plaintiff on notice of the defects. *Id.*

As an initial matter, BlueRadios did not make these arguments at summary judgment, so they are forfeited. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

*Flanders-Borden*, 11 F.4th 12, 20 (1st Cir. 2021) (arguments not raised in the district court are forfeited); *Sierra Club v. Wagner*, 555 F.3d 21, 26 (1st Cir. 2009) (although the Court can affirm a judgment for any reason found in the record, it will not "*reverse* a judgment on a ground never raised in the lower court").

In any case, *Eck* and *Spilios* are inapposite: they both arose in the continuing-representation context. *See Spilios v. Cohen,* 38 Mass. App. Ct. 338, 341, 647 N.E.2d 1218 (1995) ("That election brings the case within the continuing representation doctrine."); *Eck v. Kellem*, 51 Mass. App. Ct. 850, 855, 748 N.E.2d 1047 (2001) ("These facts bring the case close to the doctrine of continuing representation."). As explained below, the continuing-representation doctrine is *per se* inapplicable when, as here, the plaintiff has actual knowledge of the harm incurred. *Infra* Part II. And in neither case did the plaintiff ignore a "strong storm warning" of potential harm. *Frankston*, 74 Mass. App. Ct. at 373; *see id.* at 377 n.9 (distinguishing *Eck* because the plaintiff there received assurances from his lawyer that there was no legal problem).

Moreover, BlueRadios overstates the holdings of *Eck* and *Spilios*. Those cases do not create a blanket rule that a defective document cannot injure a client until it results in a court judgment. Instead, they stand for the simple proposition that, at the very ***latest***, a party will be harmed when a defective instrument is enforced against it. Depending on the facts of the case, however, a party may be

harmed well before any judgment is entered. For example, *Spilios* recognized that, in some cases, the statute of limitations began running before the judgment because the plaintiff incurred harm before judgment entered. 38 Mass. App. Ct. at 340 ("[L]itigation resulting from the alleged malpractice was held to trigger the running of the limitations period, without waiting for judgment, because the legal expense involved in defending the action supplied the necessary harm."). That holding follows well-established Massachusetts law. *See Mass. Elec. Co. v. Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268, 475 N.E.2d 390 (1985) ("A conclusion that [a] cause of action accrued only when the … case was settled would be inconsistent with the general rule in negligence actions that a cause of action accrues when some harm has occurred even though the full extent and nature of that harm has not been and cannot be established immediately."); *Salin v. Shalgian*, 18 Mass. App. Ct. 467, 470, 467 N.E.2d 475 (1984) ("A [court] decision … was not a prerequisite to accrual of these causes of action. … Rather, 'notice' is simply knowledge that an injury has occurred." (citation omitted)); *Levin v. Berley*, 728 F.2d 551, 554 (1st Cir. 1984) (applying Massachusetts law to reject the argument that a legal-malpractice claim did not accrue until there was a court judgment when the plaintiff incurred harm before the judgment).

BlueRadios alleged in its complaint that it suffered harm through incorrect inventorship and improper assignment in patent applications. ADD19 n.13; *e.g.*,

33

App.Vol.1_A121-25(¶411). When BlueRadios received the applications reflecting the allegedly incorrect inventorship and improper assignment, BlueRadios had all the information necessary to trigger accrual. *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 214 (1st Cir. 1999) ("Viewing the [the documents showing that an employee retirement plan was underfunded] alone, there can be no question that Knight had sufficient information—indeed, all of the information—it needed to know of the alleged "underfunded" condition of the Plan.").[7] That Kramer complained inventorship on certain patent applications was "███████," App.Vol.11_A5453, is ample proof of this. *Economou v. Wood*, 95 Mass. App. Ct. 1117, 2009 WL 2427347, at *2 (2019) (unpublished) (statute of limitations was running when client wrote letter to his attorney expressing his belief that the attorney overcharged him).

## B. BlueRadios had actual knowledge no later than November 2014.

Even if the events of 2008 and 2009 do not trigger the statute of limitations—and they do—the undisputed facts also show BlueRadios knew it had

---

[7] BlueRadios contends *Geo.* is no longer good law because it references the "inherently unknowable" standard, which, according to BlueRadios "no longer reflects applicable Massachusetts law." App.Br. 57. But Massachusetts has not abrogated the "inherently unknowable" standard. The SJC simply clarified that the "inherently unknowable" standard is the same as the "knew or should have known" standard, and it endorsed using the latter phrase to avoid confusion. *Davalos v. Bay Watch, Inc.*, 494 Mass. 548, 553, 240 N.E.3d 753 (2024). *Infra* at 42. Cases relying on the "inherently unknowable" formulation are still good law.

suffered appreciable harm in November 2014 when it sought advice from its own patent counsel, Klobucar, who identified the same issues giving rise to this lawsuit. ADD23-27. Klobucar's investigation started the statute-of-limitations clock in two independent ways: (i) BlueRadios incurred legal fees to ameliorate harm allegedly caused by HBSR, and (ii) BlueRadios' agent, Klobucar, independently discovered the alleged harm-causing improper assignment and inventorship and abandonment of patent applications. Here too, BlueRadios fails to meet its burden to show that these facts do not trigger the limitations period. *Ouellette*, 977 F.3d at 134.

### a.     Additional Attorneys' Fees

Under Massachusetts law, a plaintiff incurs a loss for the purpose of a legal-malpractice claim—and thus the claim accrues—when it hires another attorney to ameliorate the alleged negligence. *Frankston*, 74 Mass. App. Ct. at 375 (cause of action accrued when plaintiff incurred "additional attorneys' fees and expenses required to ameliorate the harm caused by [the attorney's] alleged error"); *Cantu*, 401 Mass. at 57 (when plaintiff hires new attorney to correct previous attorney's error, "the necessary coalescence of discovery and appreciable harm occur[s]" and the statute of limitations begins running). Klobucar sent BlueRadios invoices dated December 3, 2014 reflecting the hourly fees owed for his November 2014 services, in which he investigated the alleged inventorship errors. Thus, BlueRadios had

incurred harm—in the form of attorneys' fees—before December 5, 2014. App.Vol.11_A5514-15.

BlueRadios contends that, "while legal expenses incurred to 'ameliorate the harm' caused by an attorney's malpractice can constitute a limitations-triggering injury, such fees do not do so when expended for another purpose." App.Br. 62 (quoting *Rosen Constr. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 364 F.3d 399, 405 (1st Cir. 2004)). According to BlueRadios, because it instructed Klobucar to merely "identify" and not "fix" the patents and applications, BlueRadios did not suffer harm. *Id.*

*Rosen Construction,* the only case BlueRadios cites for that proposition, does not draw such a distinction. Instead, as soon as the client "began spending time and money" defending its rights, the client had incurred harm. 364 F.3d at 405. Likewise, Massachusetts courts recognize that "[a]ppreciable harm encompasses the incurring of legal expenses, such as litigation-related expenses in defending against, ***or advancing***, an issue that is central to the alleged legal malpractice." *Frankston*, 74 Mass. App. Ct. at 374 (emphasis added). Put simply, there is no meaningful distinction between spending money to "identify" versus to "fix" the alleged inventorship and assignment issues. Identifying an issue, after all, is the first step in fixing it. And that BlueRadios believed it necessary to retain counsel to "identify" issues also demonstrates BlueRadios' knowledge. In either

36

case, BlueRadios suffered an appreciable harm because it hired another attorney to address HBSR's alleged malpractice. *See Fessenden Sch. v. Hub Int'l Ltd.*, 99 Mass. App. Ct. 1132, 2021 WL 2742803, at *3 (2021) (unpublished) (concluding plaintiff suffered appreciable harm resulting from insurance broker's negligence when plaintiff retained a consultant and incurred costs to locate its insurance policies, even though plaintiff claimed the consultant's work related to insurance negotiations; "it does not matter how [plaintiff] characterizes the purpose of the work").

### b.     Klobucar's Knowledge

In addition, during his November 2014 investigation, Klobucar learned about BlueRadios' alleged harms through his investigation of the Golden-i patents. Specifically, on November 26, 2014, Klobucar compiled a list of "████████ ████████████" that he identified based on his search of the patent histories, noting the status of the patent applications, certain aspects of their prosecution histories, and the currently and previously listed inventors. App.Vol.16_A8367(¶¶6-7); *see* App.Vol.13_A6478(¶73c). Through that process, Klobucar learned the very facts that underlie this lawsuit: Kopin was the sole assignee of certain patents and applications, BlueRadios inventors had been deleted from an application, other applications had been abandoned, and the patent issuing from the '627 Application had incorrect inventorship. App.Vol.16_A8380.

Klobucar testified that when he was conducting patent searches, he believed the patent applications should have included both BlueRadios and Kopin as assignees, and he "reviewed [the patent applications] to determine if that was, indeed, the case," ultimately determining that the applications were assigned only to Kopin. App.Vol.5_A2466(22)-67(20).

Because Klobucar, as BlueRadios' agent, had knowledge about the harm incurred in the form of allegedly improper assignments, inventorship, and abandonment, BlueRadios, as the principal, knew that information too. *DeVaux*, 387 Mass. at 818; *Levin*, 728 F.2d at 553 (attorney's knowledge was imputed to the client for purposes of accrual).

BlueRadios offers several counterarguments, none of which has merit. BlueRadios contends BlueRadios' knowledge of all the underlying facts in November 2014 is irrelevant because it lacked "awareness" of how those facts fit together. App.Br. 66 (*citing Doe v. Creighton*, 439 Mass. 281, 284, 786 N.E.2d 1211 (2003)). According to BlueRadios, it could have "awareness" of the claim only if an "individual *within* the corporation … understood that the company was injured and that the injury resulted from an attorney's misconduct." *Id.* at 66-67.

BlueRadios' proposed test is neither the Massachusetts test for imputing knowledge to a corporation, nor the rule from *Doe*. In fact, *Doe* says nothing about imputing knowledge to a corporation for the purpose of statutes of limitations; the

plaintiff in *Doe* was an individual, not a corporation.[8] 439 Mass. at 281. In cases that actually address agents and the statute of limitations, courts consistently hold that, for purposes of accrual, "a client is charged with the knowledge of his attorney." *Levin*, 728 F.2d at 553. BlueRadios identifies no contrary case.

BlueRadios also contends, without citation, that even if it knew of appreciable harm in November 2014, there was no basis for BlueRadios to conclude at the time that HBSR's negligence caused that harm. App.Br. 67. But it is undisputed that Klobucar knew HBSR filed the patent applications. App.Vol.5_A2474(9-12), A2479(22)-80(1), A2484(18-23), A2485(22)-86(1), A2487(24)-88(2), A2491(3-6), A2500(17)-01(8). And it is undisputed that he recognized those applications had incorrect assignment information. *See* App.Vol.5_A2466(22)-67(20).

That knowledge—tying the injury to HBSR's conduct—was sufficient to start the clock. BlueRadios "need not know … that [HBSR] was negligent for the cause of action to accrue." *Williams*, 423 Mass. at 473. As soon as BlueRadios knew it "sustained appreciable harm as a result of [HBSR's] conduct, the statute of

---

[8] The court in *Doe* also seems to have rejected the same knowledge/awareness distinction BlueRadios urges here, ruling that the "plaintiff has not presented sufficient evidence to support a finding that her failure to grasp the connection between her symptoms and the defendant's conduct was objectively reasonable." 439 Mass. at 284.

limitations" began to run. *Id.*; *see also Arbogast v. Pfizer, Inc.*, No. 23-1481, 2024 WL 4986403, at *2 (1st Cir. June 20, 2024) (Massachusetts discovery rule does not "require that the lawyer's negligence be apparent in order for the clock to begin to run"); *see also Frankston*, 74 Mass. App. Ct. at 373-74 (reasoning that the plaintiff need not know the extent of the alleged malpractice for the statute of limitations to commence and concluding that plaintiff was on notice when he learned of "the very issues that underlie the alleged legal malpractice" claim).

Finally, BlueRadios asks the Court to ignore the undisputed facts that harm its case and rule that BlueRadios lacked knowledge about the harm incurred until 2017. App.Br. 46-47. But Kramer privately complained in December 2008 that inventorship on certain applications was "████." App.Vol.11_A5453. What's more, Kramer testified as BlueRadios' Rule 30(b)(6) designee in the Colorado lawsuit that he looked into the patent applications, realized BlueRadios inventors were not named on applications on which he thought they should be named, and asked his attorney to "find the history of what happened to [the] patents." App.Vol.5_A2157(4-5). That documentary evidence and testimony is undisputed, conclusively rebutting BlueRadios' bare assertion that BlueRadios did not recognize the harm incurred until 2017. *See Arbogast*, 2024 WL 4986403, at *2 (Massachusetts' "discovery rule does not delay the running of the statute-of-limitations clock until the client is aware of the full 'nature and extent' of the harm

suffered."); *RTR Techs.*, 815 F. Supp. at 421 (noting that "expressions of misgiving are compelling proof that the plaintiff was on notice" in malpractice cases).

### C. BlueRadios should have known about the allegedly incorrect inventorship and assignment in 2009.

Even if the undisputed evidence did not demonstrate BlueRadios' actual knowledge, BlueRadios at minimum should have known about the facts underlying its claims because the allegedly defective patent applications were published in 2009. App.Vol.13_A6466(¶¶44-46). Under Massachusetts law, once the patent applications were published, BlueRadios should have known about its claim, and the statute of limitations began to run. *Wise*, 769 F.2d at 2-3.

BlueRadios does not dispute that the patent applications were published in 2009 and could have been viewed by anyone. In response, BlueRadios offers only a red herring. According to BlueRadios, the district court erred by finding that BlueRadios obtained "constructive notice" though the published patent applications because Massachusetts does not recognize "constructive notice." App.Br. 53. The district court's opinion uses the term "constructive notice" twice. Once in a minor subheading, ADD17, and once in a direct quote from an SJC case, ADD25 (*quoting DeVaux*, 387 Mass. at 818). When conducting its analysis, however, the district court instead focused on whether BlueRadios knew or ***should have known*** about the facts underlying its claim. *E.g.*, ADD15, 17, 22. As BlueRadios itself admits, App.Br. 46*,* the statute of limitations begins to run as

soon as the plaintiff **should** know about the harm incurred, even if the plaintiff does not have actual knowledge, *Wise*, 769 F.2d at 2-3. Thus, the district court did not err when it relied on the "should have known" standard and found that BlueRadios should have known about the facts underlying its claim because all of the allegedly improper applications were published long before December 6, 2014.

Relatedly, BlueRadios contends that the district court improperly relied on the "inherently unknowable" standard, "thereby seeming to incorporate notions of constructive notice." App.Br. 53. Again, however, BlueRadios ignores the controlling legal standard. The SJC has clarified that the "inherently unknowable" standard is "no different from and is used interchangeably with, the 'knew or should have known' standard." *Davalos*, 494 Mass. at 553. The SJC did not abolish the "should have known" prong of the test. Thus, the district court did not err by finding that, because the patent applications and their file histories were published, BlueRadios should have known about its alleged harm. *Wise*, 769 F.2d at 2-3.

## II.    Tolling does not apply because BlueRadios had actual knowledge of the harm it alleges.

BlueRadios contends that two tolling mechanisms extended its time to file a lawsuit: the continuing-representation doctrine and the fraudulent-concealment doctrine. Both arguments are meritless. The district court correctly ruled that, even if BlueRadios could satisfy either tolling test (it cannot, *see infra* Part III), neither

applies when, as here, the plaintiff had actual knowledge of its alleged harm (BlueRadios did, *see supra* Parts I.A-B). ADD27, 31-32. BlueRadios does not challenge that ruling and so has waived that challenge. *See, e.g.*, *United States v. Mayendia-Blanco*, 905 F.3d 26, 32 (1st Cir. 2018) ("[I]t is a well-settled principle that arguments not raised by a party in its opening brief are waived.").

The district court's ruling also was correct as a matter of law. Massachusetts does not apply continuing-representation tolling where the client has actual knowledge of harm caused by the attorney's conduct. *Cantu*, 401 Mass. at 58 ("innocent reliance which the continued representation doctrine seeks to protect is not raised" where the client has "questioned and had assessed [the lawyers' ] representation … and found it to be wanting."); *see also, e.g.*, *Alves v. Cohan*, 102 Mass. App. Ct. 1116 (2023) (unpublished), *review denied*, 492 Mass. 1102 (2023); *Lyons*, 436 Mass. at 250 (continuing-representation doctrine "has no application … where the client actually knows that he suffered appreciable harm as a result of his attorney's conduct."). Likewise, Massachusetts does not apply fraudulent-concealment tolling where the client has actual knowledge of the facts. *Stark*, 50 Mass. App. Ct. at 233-34.

The continuing-representation doctrine cannot apply for an independent reason. As BlueRadios concedes, the district court found BlueRadios lacked the "innocent reliance" required to establish continuing representation. App.Br. 23.

BlueRadios neither contests this requirement nor argues it is met and thus has waived any counter-argument. *Mayendia-Blanco*, 905 F.3d at 32.

### III. Alternatively, tolling does not apply because HBSR had no attorney-client or other special relationship with BlueRadios imposing duties of disclosure.

As an initial matter, the Court need not consider whether HBSR and BlueRadios entered an attorney-client or special relationship imposing duties of complete disclosure because, even if such a relationship existed, BlueRadios' actual knowledge defeats any tolling argument. ADD32 (explaining that the district court was deciding the attorney-client relationship issue only "for completeness" because the claims were time-barred regardless whether an attorney-client relationship existed). Even putting aside BlueRadios' actual knowledge, however, summary judgment was independently appropriate because the undisputed facts show HBSR and BlueRadios never entered an attorney-client or other special relationship, without which BlueRadios cannot avail itself of any tolling doctrine.

### A. BlueRadios cannot establish an implied attorney-client relationship under Massachusetts law.

The existence of an attorney-client relationship is a question of state law. *Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC*, 736 F. Supp. 2d 353, 359 (D. Mass. 2010) (*citing Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994)). Under Massachusetts law, an attorney-client relationship can be either express or implied. *DeVaux*, 387 Mass. at 818.

It is undisputed that BlueRadios and HBSR never entered an express attorney-client agreement. App.Br. 34 ("[T]here was no express attorney-client engagement agreement between BlueRadios and HBSR."). Thus, to establish an attorney-client relationship, BlueRadios must show that it entered an implied one with HBSR.

Massachusetts applies a three-part test for determining whether an implied attorney-client relationship exists. *DeVaux*, 387 Mass. at 818. Under that test, courts recognize such a relationship only where: "(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *Id*. "Massachusetts courts have neither taken a particularly expansive view of the attorney-client relationship nor strained to manufacture professional ties in the absence of hard evidence or compelling inference." *Sheinkopf*, 927 F.2d at 1267.

The district court properly granted summary judgment on the existence of an attorney-client relationship. BlueRadios cannot establish the first or third *DeVaux* prong, because BlueRadios never sought advice from HBSR, and HBSR never provided any advice to BlueRadios.[9]

---

[9] Regardless of the Court's ruling as to the other Appellees, the Court can affirm dismissal of all claims against Cogswell because the undisputed facts show he never communicated directly with BlueRadios and became a partner only in

### 1. BlueRadios never made a concrete communication requesting representation or individualized legal advice.

The district court properly determined BlueRadios and HBSR did not enter an attorney-client relationship because BlueRadios never sought legal advice from HBSR. The first *DeVaux* prong "require[s] ***concrete*** communication by the plaintiff requesting that the attorney represent him, or explicitly seeking ***individualized*** legal advisement." *Int'l Strategies Grp.*, 482 F.3d at 8 (emphasis added); *DaRoza v. Arter*, 416 Mass. 377, 381-82, 622 N.E.2d 604 (1993) (first prong requires that the plaintiff expressly sought the attorneys' advice or assistance.). This means the putative client must have "request[ed] personal representation." *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 522, 525-26, 536 N.E.2d 344 (1989) (no attorney-client relationship where "plaintiff never requested [the firm] to represent him in this matter, never was told that [the firm] would protect his interests, and was never billed for any services").

BlueRadios admitted to the district court in response to HBSR's statement of undisputed facts that it never requested individualized legal advice or representation from HBSR. App.Vol.4_A1866-67(¶30) ("Undisputed that

---

2020, years after the alleged malpractice. ADD32 (*citing Williams*, 423 Mass. at 480). BlueRadios contends on appeal that its claims against Cogswell survive because he corresponded with Klobucar in 2015. App.Br. 41 n.6. But an attorney has no duty to disclose to ***opposing counsel*** when his firm's work is being investigated, as was the case when Cogswell and Klobucar corresponded. BlueRadios cites no authority for this erroneous proposition.

BlueRadios did not make individual requests for HBSR to perform its discreet tasks in fulfilling its role."). And the district court accepted that admission as true when deciding the summary judgment motions. ADD36 ("It is undisputed that BlueRadios did not make any individual requests for [Defendants] to perform discreet [sic] tasks."). As a result, the district court ruled that "BlueRadios … failed to adduce evidence that there is a genuine dispute that an implied attorney-client relationship was formed." ADD37.

BlueRadios now misrepresents the record in an attempt to claw back its earlier admission. It contends that it **did** seek HBSR's advice, "including requests to perform 'discrete tasks.'" App.Br. 38 (*quoting* ADD7); *see also id.* at 35 ("BlueRadios sought specialized advice and assistance from HBSR attorneys on multiple occasions"). That is exactly the opposite of what BlueRadios admitted below. App.Vol.4_A1866-67(¶30); ADD36.

BlueRadios' admission that it had "not ma[d]e individual requests for HBSR to perform its discreet [*sic*] tasks in fulfilling its role," App.Vol.4_A1866-67(¶30), is binding on BlueRadios and was a proper basis for the district court to grant summary judgment, *Cerqueira v. Cerqueira*, 828 F.2d 863, 865 (1st Cir. 1987) (courts can rely on a party's admission of a fact during summary judgment briefing to grant summary judgment); *see also* 10A Fed. Prac. & Proc. Civ. § 2723 (4th ed.) ("[A]dmissions in the brief of the party opposing the motion may be used in

determining that there is no genuine dispute as to any material fact."). Because BlueRadios did not send any "concrete communication [to HBSR] … requesting that the attorney represent [it], or explicitly seeking ***individualized*** legal advisement," BlueRadios cannot satisfy the first *DeVaux* prong. *Int'l Strategies Grp.*, 482 F.3d at 8 (emphasis added).

BlueRadios' attempts to overcome that fatal fact lack merit. First, BlueRadios points to one provisional patent application that HBSR filed naming only BlueRadios employees. App.Br. 35. But BlueRadios cites no facts showing HBSR filed that application at BlueRadios' request. Nor could it. Kopin had the ***sole*** right to make patent decisions. App.Vol.12_A6330(¶15.b).

Second, BlueRadios argues an attorney-client relationship can be inferred because BlueRadios communicated "deeply confidential information" to HBSR. App.Br. 35. But BlueRadios did not share any confidential information with HBSR that it did not also share with Kopin. App.Vol.4_A1869(¶35). That aside, merely obtaining information—even important information—from a plaintiff does not satisfy *DeVaux*, and BlueRadios cites no case to the contrary. *DaRoza*, 416 Mass. at 382 (that attorney collected information from plaintiff to respond to interrogatories did not "satisfy the first element" of *DeVaux*).

Third, BlueRadios tries to adopt ***Kopin's*** requests for legal advice as its own. App.Br. 36-37 (BlueRadios "reached out to HBSR for individualized legal advice

and assistance … *through Jacobsen*."). According to BlueRadios, Kopin was BlueRadios' agent "in its dealings with HBSR." *Id.*

As an initial matter, BlueRadios did not argue to the district court that Kopin was acting as its agent in communications with HBSR. *See generally* App.Vol.4_A1818. That argument is therefore waived. *Mayendia-Blanco*, 905 F.3d at 32. Even now, BlueRadios does not identify any specific communications in which Kopin, acting as BlueRadios' agent, requested that HBSR represent BlueRadios or sought individualized legal advice on BlueRadios' behalf. *Int'l Strategies Grp.*, 482 F.3d at 8. BlueRadios therefore cannot establish the first *DeVaux* prong even relying on Kopin's communications.

Fourth, BlueRadios contends the district court should have construed its communications with HBSR as at least impliedly requesting legal advice. App.Br. 38 (*quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 167 F. Supp. 2d 108, 117 (D. Mass. 2001)). But a request for legal advice cannot be implied. *E.g.*, *Int'l Strategies Grp*, 482 F.3d at 8 ("Courts interpreting *DeVaux* have understood this first prong to require concrete communication by the plaintiff … **explicitly** seeking individualized legal advisement." (emphasis added)). The case BlueRadios cites to the contrary, *Mass. Eye & Ear Infirmary*, improperly relied on Federal Circuit law to conclude that a request for legal advice could be implied. 167 F. Supp. 2d at 117-18. But state law, not federal common law,

49

controls the formation of an attorney-client relationship. *Max-Planck-Gesellschaft*, 736 F. Supp. 2d at 359.

And fifth, BlueRadios contends it requested legal advice when it asked HBSR to "broaden one patent application to include 'a Wifi embodiment.'" App.Br. 38. Although the district court determined that BlueRadios "made a request to the Law Firm," it did ***not*** determine that this request was for legal advice—it merely noted that BlueRadios had communicated at least once with HBSR. *See* ADD10. The district court did not have to consider whether this single communication amounted to a request for HBSR to represent BlueRadios or otherwise provide legal advice—which it obviously did not—because BlueRadios admitted that it had "not ma[d]e individual requests for HBSR to perform its discreet [*sic*] tasks in fulfilling its role," App.Vol.4_A1866-67(¶30). Thus, BlueRadios evidently did not consider that communication a discrete and express request for legal advice either. That aside, this request could not satisfy *DeVaux* for the independent reason that BlueRadios does not dispute that HBSR never broadened the application as BlueRadios requested. App.Vol.4_A1988-89(¶31).

Moreover, although HBSR maintains there was never an attorney-client relationship between HBSR and BlueRadios, at the very least, any attorney-client relationship ended on June 16, 2009. After that point, BlueRadios admittedly never had ***any*** direct communications with HBSR. App.Vol.4_A1868(¶32). Under

50

Massachusetts law, that fact is dispositive of the continuing-representation doctrine; the representation must be actively ongoing to be continuous. *Frankston*, 74 Mass. App. Ct. at 377. BlueRadios contends that the representation continues to this day but cites no case under which Massachusetts law considers an attorney to continually represent a client for years without any request for legal advice, much less any communication whatsoever.

### 2. HBSR never provided individualized legal advice in response to any request by BlueRadios.

BlueRadios also cannot establish the third *DeVaux* prong. Although the district court did not reach this prong because it concluded the first prong is not satisfied, ADD37 n.20, this Court can nonetheless grant summary judgment on the third prong because the Court can affirm for any reason in the record. *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 62 n.3 (1st Cir. 2021).

The third prong can be met if the plaintiff proves either (1) the lawyer agreed to or actually did provide legal services that the plaintiff requested, *Int'l Strategies Grp*, 482 F.3d at 10 (requiring that the lawyer "expressly or impliedly agreed to give or actually gave the requested advice or assistance"); or (2) it reasonably relied on the lawyer, and the lawyer was "aware of such reliance" but "did nothing to negate it." *Id.*

Neither test can be satisfied. The first test fails because BlueRadios does not cite any fact showing HBSR provided legal services at BlueRadios' request.

51

BlueRadios' mere incidental benefit from HBSR's provision of legal services to Kopin cannot prove the third prong. *Id.* at 10-11 (plaintiff's expectation that it "would be an eventual financial beneficiary" of lawyer's recovery of funds for its client does not satisfy third prong); *Norton v. Donovan*, No. SUCV20180091BLS1, 2018 WL 3059846, at *2 (Mass. Super. Apr. 23, 2018) ("the fact that [the lawyer's] service to a pre-existing client may have had the effect of also being valuable to [the putative joint client] simply does not establish an attorney-client relationship with [the lawyer]"). Filing a patent application cannot by itself create an attorney-client relationship where BlueRadios points to no fact showing HBSR filed any application at BlueRadios' request, as opposed to Kopin's.

Nor can BlueRadios prove the alternative test because it is undisputed that BlueRadios' "professed reliance" on HBSR was "uncommunicated," and HBSR was not "actually aware" of that reliance. *Sheinkopf*, 927 F.2d at 1268. BlueRadios' stated reliance also is unreasonable. BlueRadios admits that it granted to Kopin, whom BlueRadios understood had a preexisting relationship with HBSR, the exclusive "███████████████████" to make patent decisions. App.Vol.12_A6330(¶15.b). Over one year after BlueRadios was introduced to HBSR, and almost a year after HBSR filed the first patent application naming BlueRadios inventors, BlueRadios continued to refer to HBSR as "███████████

█████████" or "████████." App.Vol.12_A6338-39(¶37). Although BlueRadios contends HBSR represented it "well into the limitations period," App.Br. 26, BlueRadios admits that it last directly communicated with HBSR on June 16, 2009. App.Vol.4_A1868(¶32). Moreover, BlueRadios admits that when it discovered improper inventorship in a patent application—something Kramer said is "██████"—it considered sending a "███████████" to HBSR seeking a correction. App.Vol.12_A6352(¶61). A client does not send a "████████" to its own lawyer to ask that a drafting error be fixed; it picks up the phone or sends an email. These undisputed facts make clear that, if BlueRadios subjectively believed it entered an attorney-client relationship with HBSR, that belief was unreasonable.

Recognizing this, BlueRadios tries to rely on ***HBSR's*** communications to establish the reasonableness of BlueRadios' purported belief, pointing to patent filings identifying HBSR as "Attorney for the inventors" (not BlueRadios). App.Br. 29-30. But BlueRadios offers no evidence that it received or even knew of those communications at the time, so they have no bearing on whether BlueRadios' belief was reasonable.

### 3. The Court cannot impute an attorney-client relationship contrary to Massachusetts law.

BlueRadios and its amici, apparently recognizing they cannot satisfy the *DeVaux* test, ask this Court to ignore black-letter Massachusetts law and adopt a series of different tests for establishing an attorney-client relationship, at least in

the context of patent prosecution. For example, BlueRadios asks the Court to adopt

the "law in this circuit" under which parties who jointly prosecute a patent

application are considered to be joint clients of the prosecuting attorneys.[10] App.Br.

30; *see also* Robinson Amicus 8 (asserting the Court should adopt a rule from the

Southern District of New York under which two parties that jointly prosecute a

patent are considered joint clients of the lawyer filing the application). Likewise,

BlueRadios says it "executed a power of attorney in favor of HBSR," which it

contends must have some impact on whether an attorney-client relationship was

formed. App.Br. 35 (*citing Sun Studs, Inc. v. Applied Theory Assocs., Inc*., 772

F.2d 1557, 1568 (Fed. Cir. 1985)). BlueRadios also asserts that the Court should

rely on the BlueRadios/Kopin "joint venture" to extend HBSR's attorney client

---

[10] BlueRadios suggests this law is consistent with the Colorado court's order disqualifying HBSR, e.g., App.Br. 31—an order whose "factual findings" BlueRadios has acknowledged are "limited only to the issue of disqualification," No. 1:16-cv-02052-JLK [Dkt. 98] at 4 (D. Colo. Apr. 3, 2018). That aside, the Colorado court relied only on Colorado's ethics rules in disqualifying HBSR. App.Vol.1_A421, A424. Its order is not preclusive on the issue whether an attorney-client relationship formed under Massachusetts law. *Jarosz v. Palmer*, 436 Mass. 526, 532-33, 766 N.E.2d 482 (2002) (holding order on motion to disqualify counsel in prior case is not preclusive in later case against that counsel because the order "was clearly not essential to" the merits of the prior case's claims). Nor is the order persuasive. The Colorado court entered it without the benefit of discovery—including the many documents and admissions the district court here relied on in entering summary judgment.

relationship with Kopin to also cover BlueRadios. App.Br. 36-37 (*citing Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 211 (S.D.N.Y. 2009)).

The Court should reject those flawed arguments out of hand because they ask the Court to alter Massachusetts law and apply another state's law—or some sort of federal common law—that would provide BlueRadios a better outcome. Federal courts cannot "expand or alter state law." *Phoung Luc v. Wyndham Mgmt. Corp.*, 496 F.3d 85, 91 n.5 (1st Cir. 2007). BlueRadios fails to explain why the Court should deviate from *DeVaux* and adopt a series of tests the SJC has never suggested it plans to adopt. The Court should not do so.

Even if the Court *could* alter *DeVaux*, doing so would not alter the outcome here, because even under the tests BlueRadios proposes, it could not establish the existence of an attorney-client relationship.

**Joint Patent Application.** BlueRadios asserts that the Court should adopt the "law in this circuit" under which parties who jointly prosecute a patent application are considered to be joint clients of the prosecuting attorneys. App.Br. 30 (citing *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215 (1st Cir. 2005)). But *Mass Eye & Ear* does not suggest that an attorney who files a patent application has *per se* formed an attorney-client relationship with all co-applicants, and its holding conflicts with Massachusetts law. The purported client there sent patent counsel a letter labeled "Confidential" that discussed novel

aspects of a project and potential subject matter for claims. *Mass. Eye & Ear Infirmary*, 167 F. Supp. 2d at 118. Relying on "Federal Circuit privilege law" stating "it is not necessary to expressly request confidential legal assistance when that request is implied," the court found a "request for confidential legal assistance is implicit in" that letter. *Id.* at 117-18 (quoting *In re Spalding Sports Worldwide*, 203 F.3d 800, 806 (Fed. Cir. 2000)). Massachusetts law, however, requires that the plaintiff made a "concrete communication … requesting that the attorney represent him, or explicitly seeking individualized legal advisement." *Int'l Strategies Grp.*, 482 F.3d at 8; *Sheinkopf*, 927 F.2d at 1268; *Robertson*, 404 Mass. at 526. BlueRadios does not—and could not—point to any such communication here.

The other cases BlueRadios calls an "unbroken line of authorities," and that it claims stand for similar principles, App.Br. 30-32, also apply non-Massachusetts law, arise in dissimilar procedural contexts, and are equally unhelpful. Worse, BlueRadios does not accurately describe them. Its citation to *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389-90 (Fed. Cir. 1996), for example, includes a holding that appears nowhere in the opinion. App.Br. 31. Its citation to *Wright v. Rinaldo*, 761 N.W.2d 114, 116 (Mich. App. 2008), for another example, fails to point out that the quoted language appears in a dissenting opinion and is unrelated to the majority opinion's holding. App.Br. 31.

**Powers of Attorney.** BlueRadios also contends that it "executed a power of attorney in favor of HBSR," which must "have some impact" on whether an attorney-client relationship exists. App.Br. 35. BlueRadios does not identify a single power of attorney that it or its employees "executed" in "favor of HBSR," so it is unclear what, exactly, BlueRadios is referencing. While filing receipts generated by the USPTO name the filing attorney as "Power of Attorney" for the "Applicant(s)" (which applicants included Kopin and the individual inventors—but never BlueRadios), App.Vol.3_A1413(¶77) (citing App.Vol.2_A682), and while *Kopin* executed a power of attorney in favor of HBSR, App.Vol.3_A1429(¶124) (citing App.Vol.2_A785), the record lacks a single power of attorney executed by any BlueRadios employee, much less by BlueRadios itself, in favor of HBSR. Moreover, even under BlueRadios' proposed rule, filing a power of attorney is not dispositive. The case BlueRadios criticizes the district court for relying on and other authority actually applying Massachusetts law recognize that a power of attorney does not automatically create an attorney-client relationship. *Sun Studs*, 772 F.2d at 1568 ("[A] power of attorney does not *ipso facto* create an attorney-client relationship"); *see also Int'l Strategies Grp.*, 482 F.3d at 8 ("While the power of attorney may have some impact on our analysis of whether an implied attorney-client relationship was formed, it is certain that such a limited power of attorney did not create an express attorney-client relationship."). So too here.

**Joint Ventures.** BlueRadios suggests the Court should adopt the New York rule that expands the attorney client relationship in the context of a "joint venture." App.Br. 37. But BlueRadios' brief nowhere develops any argument that BlueRadios had a joint venture with Kopin, and BlueRadios thus has waived the argument. *Segrain v. Duffy*, 118 F.4th 45, 71 (1st Cir. 2024) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Even if the argument were developed, BlueRadios never entered a joint venture with Kopin. BlueRadios and Kopin litigated that precise issue in the Colorado litigation, where the court rejected BlueRadios' argument and determined on summary judgment that, "rather than creating 'a special relationship of trust" or any fiduciary duty, the contract was "a standard business transaction." App.Vol.4_A2014(¶84) (citation omitted). That ruling is correct. Under Massachusetts law, essential elements of a joint venture include "a right to share in profits" and a "duty to share in losses." *Shain Inv. Co., Inc. v. Cohen*, 15 Mass. App. Ct. 4, 9, 443 N.E.2d 126 (1982). A joint venture does not exist where there is no sharing of profits and losses. *Patriot Gen. Life Ins. Co. v. CFC Inv. Co.*, 11 Mass. App. Ct. 857, 860, 420 N.E.2d 918 (1981). The undisputed evidence shows that, under its contract with Kopin, BlueRadios received retainer and per-unit-sold royalty payments, with no sharing of profits or

losses. App.Vol.13_A6450-51(¶15.a), A6453(¶16). Thus, even if Massachusetts adopted a "joint venture" rule like New York, it would not apply.

### B.    HBSR owed no independent duty to BlueRadios.

BlueRadios also asserts that, even absent an attorney-client relationship, HBSR and BlueRadios had a special relationship that imposed an independent duty to disclose, entitling BlueRadios to tolling based on fraudulent concealment. App.Br. 43-45. BlueRadios is wrong.

As an initial matter, BlueRadios fails to challenge the portion of the district court's order addressing other special relationships. The district court refused to impose on HBSR a duty to BlueRadios as a non-client because that duty would conflict with HBSR's duties to Kopin—and BlueRadios' and Kopin's interests were adverse. ADD30-31; *see also Spinner v. Nutt*, 417 Mass. 549, 554, 631 N.E.2d 542 (1994) (noting the SJC's decisions "make clear" that "the ***potential*** for conflict" between the duty the non-client seeks to impose and the lawyer's duties to his client "***prevents*** the imposition of a duty on the [lawyer] to the [nonclient]" (emphasis added)). BlueRadios has waived any counterargument by failing to address that portion of the district court's ruling on appeal. *Mayendia-Blanco*, 905 F.3d at 32.

BlueRadios' challenge also fails on the merits. Courts "have repeatedly drawn on the importance of the duty of confidentiality in finding the potential for a

conflict" that defeats the imposition of a duty to a non-client. *Antonellis*, 80 F.3d at 610. BlueRadios claims HBSR had a duty to disclose to it that HBSR, on behalf of its client Kopin, planned to file or had filed documents with the USPTO amending certain patent applications or that certain applications would be or had been abandoned. *E.g.*, App.Vol.1_A90-91(¶253), A92(¶261), A95(¶278), A101-02(¶309). Any duty of disclosure that HBSR owed to BlueRadios would conflict with HBSR's duty of confidentiality to Kopin. Mass. R. Prof. C. 1.6.  The duty of disclosure BlueRadios seeks to impose also would conflict with HBSR's duty of loyalty to Kopin, Mass. R. Prof. C. 1.7 cmt [1], because BlueRadios alleges it would have "take[n] steps to correct" certain actions had HBSR disclosed them. App.Vol.1_A135(¶449). HBSR could not both represent Kopin, which had the "sole right and responsibility" to prosecute the patent applications, App.Vol.10_A5109, with undivided loyalty and take actions causing BlueRadios to take conflicting "steps." This is yet another reason precluding the imposition of an independent duty.

While the potential for conflicting duties precludes the imposition of a duty to a non-client even when the client's and non-client's interests are aligned, the district court also recited undisputed facts showing BlueRadios' and Kopin's interests in fact were adverse. ADD30-31. These facts include that, as early as December 2008, BlueRadios and Kopin wanted to name different inventors on

certain patent applications, App.Vol.12_A6260, and, in July 2009, BlueRadios accused Kopin of having "█████████" the contract, App.Vol.12_A6476(¶67).

Ignoring all of that, BlueRadios now argues that "[e]ven if [HBSR] were not BlueRadios' attorneys, they would remain BlueRadios' agents" due to "the multiple powers of attorney BlueRadios executed in HBSR's favor." App.Br. 44. According to BlueRadios, "[t]hat agency relationship imposed a duty on HBSR 'to make full disclosure to the principal of all material facts relevant to the agency' relationship." *Id.* (quoting *Gagnon v. Coombs*, 39 Mass. App. Ct. 144, 156, 654 N.E.2d 54 (1995)). That argument fails for two reasons. First, BlueRadios never made the argument in its summary judgment briefing and cannot raise it now. Second, as explained above, the record contains no evidence that either BlueRadios or its employees executed a ***single*** power of attorney in HBSR's favor, *supra* at 57—hence why BlueRadios did not make this argument below. Even if this Court were to consider the argument, the argument rests on misrepresentations of "fact" that cannot support reversal.

## CONCLUSION

Because the undisputed material facts establish that BlueRadios' claims are time-barred, the district court properly granted summary judgment. This Court should affirm.

Dated:  May 28, 2025                    Respectfully submitted,


                                        *s/ Carolyn J. Fairless*
                                        Carolyn J. Fairless
                                        David J. Schaller
                                        Frederick R. Yarger
                                        William D. Hauptman
                                        Wheeler Trigg O'Donnell LLP
                                        370 Seventeenth Street, Suite 4500
                                        Denver, CO 80202-5647
                                        Telephone:  303.244.1800
                                        Facsimile:   303.244.1879
                                        E-mail:    fairless@wtotrial.com
                                                   schaller@wtotrial.com
                                                   yarger@wtotrial.com
                                                   hauptman@wtotrial.com

                                        Attorneys for Defendants-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Although the Defendants-Appellees believe that the issues presented by this appeal are clear, they respectfully request oral argument to have the opportunity to address any questions the Court may have with respect to this case.

By:  *s/ Carolyn J. Fairless*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

[X] this brief contains 12,970 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using
Microsoft Word 2021 in Times Roman 14 point font.

Dated: May 28, 2025                   *s/ Carolyn J. Fairless*
                                      Carolyn J. Fairless
                                      David J. Schaller
                                      Frederick R. Yarger
                                      William D. Hauptman
                                      Wheeler Trigg O'Donnell LLP
                                      370 Seventeenth Street, Suite 4500
                                      Denver, CO 80202-5647
                                      Telephone:   303.244.1800
                                      Facsimile:   303.244.1879
                                      E-mail:    fairless@wtotrial.com
                                                 schaller@wtotrial.com
                                                 yarger@wtotrial.com
                                                 hauptman@wtotrial.com

## CERTIFICATE OF SERVICE CM/ECF

I hereby certify that on May 28, 2025 I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system, and all counsel of record are registered as ECF Filers and will be

served by the CM/ECF system.

*s/ Carolyn J. Fairless*