**ORAL ARGUMENT REQUESTED**

No. 24-1942

# United States Court of Appeals for the First Circuit

BLUERADIOS, INC., a Colorado corporation,
*Plaintiff - Appellant,*
v.

HAMILTON, BROOK, SMITH & REYNOLDS, P.C., a Massachusetts professional corporation; DAVID J. THIBODEAU, JR., an individual; LAWRENCE P. COGSWELL, III, an individual; GERALD KAZANJIAN, an individual; STEPHEN D. BROOK, as Personal Representative of the Estate of David E. Brook; JOSHUA MATLOFF, an individual, NELSON SCOTT PIERCE, an individual,
*Defendants- Appellees.*

*On appeal from the United States District Court*
*for the District of Massachusetts*
No. 21-cv-10488-DJC
*Honorable Denise J. Casper*

## PUBLIC PLAINTIFF-APPELLANT'S REPLY BRIEF

David B. Seserman
SESERMAN LAW LLC
3900 E. Mexico Ave.
Suite 300
Denver, CO  80210
(303) 900-2406

J. Carl Cecere
CECERE PC
6035 McCommas Blvd.
Dallas, Texas  75206
(469) 600-9455
ccecere@cecerepc.com

Douglas W. Salvesen
Sanford F. Rems
YURKO PARTNERS, P.C.
One Tech Drive
Suite 205
Andover, MA  01810

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of authorities............................................................................. iii

Introduction and summary of the argument ........................................1

Argument...............................................................................................3

I.    BlueRadios had an attorney-client relationship with HBSR. ..................3

    A.    The attorney-client relationship is conclusively established
        in this case. ........................................................................4

    B.    There is at least a genuine issue of material fact on whether
        BlueRadios had an attorney-client relationship with HBSR.
        ..........................................................................................10

        1.    BlueRadios made concrete, individualized requests
            for advice and assistance directly to HSBR. .......................11

        2.    BlueRadios also requested advice and assistance from
            HBSR through Kopin...........................................................13

        3.    HBSR's other attempts to avoid the genuine issues of
            material fact in this case are meritless.................................14

II.    HBSR owed a duty of disclosure to BlueRadios even in the absence
    of an attorney-client relationship. ...........................................................15

III.    BlueRadios' claims are timely under the discovery rule.........................17

    A.    The patent applications BlueRadios received did not convey
        limitations-triggering notice. ............................................17

    B.    Nothing in the 2008-2009 timeframe gave BlueRadios notice
        of injury or HBSR's malpractice. .....................................20

        1.    The patent applications BlueRadios received did not,
            and could not, convey limitations-triggering notice. ..........20

        2.    The publication of patent applications also did not
            convey limitations-accruing notice to BlueRadios. .............26

i

C.    Nothing occurring during Klobucar's 2014 limited search of the Golden-i patent portfolio gave BlueRadios limitations-triggering notice. ................................................................. 27

Conclusion.................................................................................................. 33

Certificate of compliance ...................................................................... 34

Certificate of service.............................................................................. 35

# TABLE OF AUTHORITIES

## Cases

*Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths,*
*Forgers & Helpers, Local 374,*
175 F.3d 526 (7th Cir. 1999) ..............................................................14

*DeVaux v. Am. Home Assur. Co.,*
444 N.E.2d 355 (Mass. 1983) .................................................... passim

*Doe v. Creighton,*
786 N.E.2d 1211 (Mass. 2003) .....................................................30, 32

*Eck v. Kellem,*
748 N.E.2d 1047 (Mass. App. 2001).......................................18, 19, 30

*Fessenden Sch. v. Hub Int'l Ltd.,*
99 Mass. App. Ct. 1132, 2021 WL 2742803 (2021) (unpublished) ...........26, 29

*In re Regents of the Univ. of Cal.,*
101 F.3d 1386 (Fed. Cir. 1996)..............................................................8

*Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP,*
482 F.3d 1 (1st Cir. 2007)..........................................................6, 9, 11

*Levin v. Berley,*
728 F.2d 551 (1st Cir. 1984)................................................................19

*Lyons v. Nutt,*
763 N.E.2d 1065 (Mass. 2002)............................................................25

*Mass. Elec. Co. v. Fletcher, Tilton & Whipple, P.C.,*
475 N.E.2d 390 (Mass. 1985)..............................................................19

*Page v. Frazier,*
445 N.E.2d 148 (Mass. 1983)..............................................................13

*Rosen Constr. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky &*
*Popeo, P.C.,*
364 F.3d 399 (1st Cir. 2004)................................................................30

*Salin v. Shalgian,*
    467 N.E.2d 475 (Mass. App. 1984)....................................................................19

*Sheinkopf v. Stone,*
    927 F.2d 1259 (1st Cir. 1991)..........................................................................5

*Spilios v. Cohen,*
    647 N.E.2d 1218 (Mass. App. 1995)..........................................................18, 19

*Sun Studs, Inc. v. Applied Theory Assocs., Inc.,*
    772 F.2d 1557 (Fed. Cir. 1985)........................................................................4, 6

*Techs., Inc. v. Helming,*
    815 F. Supp. 2d 411 (D. Mass. 2011) ...............................................................24

*United States ex rel. Schutte v. SuperValu Inc.,*
    598 U.S. 739 (2023) ........................................................................................31

*United States v. La Guardia,*
    902 F.2d 1010 (1st Cir. 1990)..........................................................................14

*Universal Title Ins. Co. v. United States,*
    942 F.2d 1311 (8th Cir. 1991). ........................................................................14

*Vinci v. Byers,*
    837 N.E.2d 1140 (Mass. App. 2005).................................................................24

*Williams v. Ely,*
    668 N.E.2d 799 (Mass. 1996)...........................................................................8

*Wright v. Rinaldo,*
    761 N.W.2d 114 (Mich. App. 2008) ...................................................................7

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) ........................................................................................14

**Regulation**

37 C.F.R. § 1.34 ....................................................................................................6, 10

**Other Authorities**

*Black's Law Dictionary* (6th ed. 1991).................................................27

Bryan A. Garner, *Garner's Dictionary of Legal Usage* (3d ed. 2011).............31

Mass. R. Prof'l Conduct .......................................................15

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (2000)............7, 13

U.S. Patent & Trademark Office, *Manual of Patent Examining Procedure*
    (9th ed. 2014)...............................................................22

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

HSBR's brief is more important for what it omits than what it includes. HSBR nowhere denies that it participated in a scheme with Kopin to deprive BlueRadios of the intellectual property it developed for the Golden-i venture. HBSR tacitly admits that in furtherance of that scheme, HBSR made numerous surreptitious changes to inventorship on several patent applications it filed on BlueRadios' behalf and abandoned others. As a result, the Golden-i patent portfolio is now owned 100% by Kopin, even though BlueRadios developed most of the technology that went into it.

HBSR likewise elides the egregious errors in the district court's summary-judgment holdings on both the attorney-client relationship and limitations. Like the district court, HBSR barely mentions, let alone overcomes, HBSR's numerous acknowledgements of its attorney-client relationship with BlueRadios—both through word and deed—most pointedly through the '177 provisional that HBSR filed solely on BlueRadios' behalf. That provisional *alone* establishes the attorney-client relationship between HBSR and BlueRadios as a matter of law because HBSR *had* to have such a relationship to prosecute an application on BlueRadios' behalf. HBSR likewise ignores the numerous "concrete" "individualized" requests for legal "advice

and assistance" that BlueRadios made to HSBR—express and implied, through Kopin and on its own—which at least create genuine issues of material fact on the existence of that relationship.

HBSR's willful blindness continues on the issue of limitations. HBSR doubles down on the district court's misapplication of the summary-judgment standard and misinterpretation of the evidence to suggest that BlueRadios harbored suspicions about issues in the Golden-i patent applications for nearly a decade before suing over them, and developed concerns about the Golden-i patent portfolio before retaining James Klobucar to review it—even after BlueRadios demonstrated that neither of those facts are remotely true. HBSR likewise does not explain how the district court's limitations analysis can survive its failure to recognize the crucial differences between provisional patent applications, regular applications, and issued patents. And HBSR never acknowledges the amicus briefs filed by US Inventor and Professor Keith Robinson, which make a powerful case that these errors will make life materially more difficult for inventors, entrepreneurs, start-ups, and joint ventures.

HBSR's failure to defend the district court's decision on each of these essential points proves that the decision has no defense, thereby illustrating why the judgment must be reversed.

## ARGUMENT

### I.    BlueRadios had an attorney-client relationship with HBSR.

HBSR's appellate strategy hinges on its request that the Court decline to address whether an "attorney-client" relationship exists between HBSR and BlueRadios, encouraging the Court to resolve the appeal on limitations alone. (HBSR.Br.44.) The reasoning behind this strategy is both obvious and insidious: HBSR is betting that a remand on limitations is likely, but it hopes that if the ruling on the absence of an attorney-client relationship remains standing, BlueRadios would be left on remand with a legal malpractice case containing no legal malpractice claims. That result would be completely unjust.

The attorney-client relationship must be front-and-center in this appeal, both to provide BlueRadios the benefit of the continuing-representation doctrine and to preserve its substantive malpractice claims. The Court should therefore hold that BlueRadios proved this relationship as a matter of law— or at least raised genuine issues of material fact on the issue.

3

### A. The attorney-client relationship is conclusively established in this case.

True to form, HBSR barely mentions the most compelling evidence demonstrating the attorney-client relationship between HBSR and BlueRadios, including instances in which HSBR lawyers *claimed* to be BlueRadios' "Attorney[s]," obtained powers of attorney *authorizing* them to serve as BlueRadios' attorneys, and *acted* as BlueRadios' attorneys by prosecuting patent applications on its behalf. (Br.29-30.) Perhaps most importantly, HBSR filed the very first provisional application on the Golden-i project (the '177) on behalf of BlueRadios *alone*—conclusive evidence that it represented BlueRadios. (*Id.*29.) Further, not once did HBSR ever disclaim this attorney-client relationship.

While HBSR emphasizes that it took many of these actions on behalf of individual BlueRadios inventors rather than BlueRadios itself (HBSR.Br.53), HBSR never denies that those inventors had all "assigned" their inventive rights to BlueRadios (*see* ADD19), making BlueRadios the "beneficial[] owne[r]" of the inventions embodied in the applications and HBSR's true client. *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1568-69 (Fed. Cir. 1985).

4

Similarly ineffective are HBSR's complaints about the representations and actions conclusively establishing BlueRadios' attorney-client relationship with HBSR.

**WIPO Representations.** David Thibodeau, the lead HBSR attorney on the Golden-i project, expressly represented to the WIPO that he was BlueRadios' "Attorney." A545, A827. Regardless of whether anyone at BlueRadios *saw* that representation (*see* HBSR.Br.53), the mere fact that Thibodeau *made* that representation established that both he and HBSR were BlueRadios' attorneys—binding admissions that make BlueRadios' belief that HBSR's lawyers were its lawyers "objectively reasonable." *Sheinkopf v. Stone*, 927 F.2d 1259, 1265 (1st Cir. 1991). At a minimum, this representation creates genuine issues of material fact on how HBSR, Kopin, and BlueRadios characterized their relationship. (*See* Br.30; HBSR.Br.7-8, 13.)

**The '177 provisional application**. HBSR likewise fails to overcome the relevance of the '177 provisional, which names only BlueRadios inventors. (Br.11-12,30.) HBSR never mentions this application by name, noting only in passing that BlueRadios never explicitly "request[ed]" it (HBSR.Br.48). That is irrelevant. Drafting claims and filing patent applications constitute the practice of law, and an attorney must represent a party to file applications on

its behalf. (*See* Br.31) (citing 37 C.F.R. § 1.34.) HSBR therefore could not file the '177 *at all* unless its attorneys represented the inventors listed on the patent. (*Id.*) The '177 is therefore conclusive evidence of the attorney-client relationship.

***Joint patent applications.*** HBSR also cannot avoid the conclusive relevance of the numerous joint patent applications that HBSR filed on *both* BlueRadios' and Kopin's behalf or the applicability of the uniform line of cases establishing that joint applications filed on behalf of joint venturers equate to joint attorney-client relationships as a matter of law. (Br.29-31.) Indeed, HBSR tacitly disclaims any reliance on the sole authority the district court offered to rebut this line of cases, never citing the inapposite *Sun Studs* case for this point. (*See* Br.32-33) (citing ADD33.)

HBSR nevertheless urges the Court to discard this line of cases as inconsistent with "concrete communication" requirement from *DeVaux v. American Home Assurance Co.*, 444 N.E.2d 355, 357 (Mass. 1983), which HBSR claims to be unique. (HBSR.Br.54-56) (quoting *Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*, 482 F.3d 1, 8 (1st Cir. 2007)). Yet there is no inconsistency. States universally apply the same rule as *DeVaux*, requiring that a putative client "manifest" intent to initiate a relationship with a lawyer,

so the states that have adopted the joint-application rule maintain it side-by-side with the manifestation requirement. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 (2000). This is because the two rules address different situations. The former exists to determine whether parties have *initiated* an attorney-client relationship, serving to differentiate informal cocktail conversations from binding fiduciary relationships, and all the cases that HBSR cites are of that ilk. (*See* HBSR.Br.46.) The latter establishes that an attorney-client relationship *has already* been initiated when an attorney files a joint patent application for multiple clients in a joint venture, serving "exactly the same function as appearance" in a lawsuit. *Wright v. Rinaldo*, 761 N.W.2d 114, 122 (Mich. App. 2008) (Gleicher, J. dissenting).[1]

Massachusetts cases similarly recognize that there is no need for a manifestation of intent to initiate an attorney-client relationship, and no need to resort to *DeVaux*, where objective evidence exists that the parties have *already* begun acting pursuant to an attorney-client relationship, concluding that such evidence establishes the relationship's existence on its own. *See*

---

[1] That Justice Wright made this observation in dissent (HBSR.Br.56) makes it no less true, especially because the *Wright* majority agreed about when the attorney-client relationship at issue in that case began, disagreeing only about when the relationship "ended." 761 N.W.2d at 116.

*Williams v. Ely*, 668 N.E.2d 799, 805-06 (Mass. 1996) (firm's "involvement" in filing "disclaimers" of interest in a trust established "an attorney-client relationship"). Accordingly, the law is the same in Massachusetts as elsewhere.

Desperate to overcome the force and logic of the joint-application rule, HBSR claims that BlueRadios cannot invoke the rule without establishing a "joint venture" with Kopin—in the formal legal sense of a "relationship of trust" creating fiduciary duties—and emphasizes that the Colorado district court found no such formal joint venture to exist. (HBSR.Br.3,54,58.) HBSR ignores, however, that the Colorado district court later broadened its ruling, determining that BlueRadios and Kopin *were* pursuing a "joint venture" in its *informal* sense, *BlueRadios, Inc. v. Kopin Corp., Inc.*, No. 16-CV-2052-JLK [Dkt. 112] at 6 (D. Colo. June 20, 2018), referring to two entities pursuing the "common legal interest in developing patents" of "obtaining the greatest protection" for intellectual property rights developed during the venture. *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389-90 (Fed. Cir. 1996).[2] The Colorado court found that "whether called a joint venture or a collaboration

---

[2] HBSR claims it could not locate this holding in the *Regents* case (HBSR.Br.56), but it is a direct quote.

agreement, the adherents jointly participated in a project to develop Golden-i." A7283.

The Colorado court also repeatedly held that this collaborative relationship led to a joint attorney-client relationship between HSBR, BlueRadios, and Kopin, holding that by "assist[ing]" in this undertaking "by preparing, filing, and perfecting the parties' jointly held rights in patent applications … HBSR was acting as attorney for both parties." No. 1:16-cv-02052-JLK [Dkt. 379] at 7. Accordingly, the Colorado court's rulings adopt BlueRadios' argument, not that of HBSR. And while these rulings may not be "preclusive" on this issue, they remain highly persuasive and should be followed to resolve the current conflict about the existence of HSBR's attorney-client relationship with BlueRadios. (HBSR.Br.54 n.10.)

**_Powers of attorney_**. HBSR's desperation shines through even more in its attempt to sidestep the powers of attorney that BlueRadios inventors executed in HSBR's favor. Given the obvious "impact" of such powers of attorney on the analysis of whether an implied attorney-client relationship was formed, _Int'l Strategy Grp., Ltd._, 482 F.3d at 8, HBSR is forced to pretend these documents simply _do not exist_. (HBSR.Br.57.) Apparently, HBSR would prefer admitting that it has committed malpractice before the USPTO by filing

patent applications on BlueRadios' behalf without its authorization (*see* 37 C.F.R. § 1.34) to admitting that it has an attorney-client relationship with BlueRadios.

Yet even this desperate effort is ultimately ineffective. The district court repeatedly acknowledged that BlueRadios inventors executed powers of attorney in favor of HBSR attorneys. ADD10,33. Those documents are also repeatedly referenced in BlueRadios' complaint, its summary judgment evidence, expert reports from both parties, and the patent applications at issue in this case. *See, e.g.*, A682, A784, A785, A1804, A4249-50, A4256-57, A7036, A7046, A7189, A7202, A8702, A8722, A8725, A8788, A8873. It is now too late for HBSR to contest these documents' existence—or the attorney-client relationship that springs from them.

**B.    There is at least a genuine issue of material fact on whether BlueRadios had an attorney-client relationship with HBSR.**

Yet even if none of the evidence mentioned above conclusively established an attorney-client relationship between HBSR and BlueRadios, and *DeVaux* provides the controlling test, a genuine issue of material fact still remains whether that test is satisfied here.

### 1. BlueRadios made concrete, individualized requests for advice and assistance directly to HSBR.

BlueRadios unquestionably made "concrete" communications to HBSR requesting individualized legal "advice or assistance" as *DeVaux* requires. *Int'l Strategies Grp., Ltd.*, 482 F.3d at 8. BlueRadios made many of those requests directly to HSBR—and HBSR raises little beyond meritless waiver arguments to suggest otherwise.

HBSR emphasizes that BlueRadios stated, in response to HBSR's statement of undisputed material facts, that BlueRadios did not request HBSR to "perform … discreet tasks" (HBSR.Br.47) (quoting A1866-67), but that was not an admission that BlueRadios had never requested advice or assistance from HBSR *of any kind*. On the contrary, in the paragraph immediately before the one HBSR cites, BlueRadios stated it *had* "requested advice and assistance from HBSR on numerous occasions." A1866-67. BlueRadios has waived nothing.

BlueRadios' direct requests for advice and assistance are also not limited to the single episode that the district court acknowledged—about whether HBSR should "broaden one patent application to include a 'Wifi embodiment.'" (HBSR.Br.50) (citing ADD10). On the contrary, BlueRadios made numerous direct requests for advice and assistance to HBSR (as

illustrated in a 25-page chart) on such matters as areas of patentability, patent strategy, the status of applications, the contents of applications, and the possible inclusion of additional inventors on applications. (*See* Br.11; A1867.) Regardless of whether these communications constituted explicit requests for "legal advice," they were unquestionably requests for HSBR's legal "assistance" in filing patent applications, and even HBSR acknowledges that requests for either "advice *or* assistance" satisfy *DeVaux*. (HBSR.Br.46) (internal quotation omitted). It is also immaterial whether HBSR *complied* with all those requests (*see* HBSR.Br.50)—clients frequently request legal assistance their lawyers are unable to provide. What matters under *DeVaux* is whether a request was *made*. There is no question that this requirement is satisfied.

Furthermore, the mere fact that BlueRadios discussed with HBSR the possibility of having the firm file patent applications on its behalf and handed over deeply confidential information to assist HBSR in that task constitutes at least an *implicit* request for legal advice or assistance. HBSR insists that implicit requests are incompatible with *DeVaux*'s requirement of "concrete" and "explicit[]" requests of advice and assistance. (HBSR.Br.49.) Massachusetts courts have held otherwise, recognizing that prospective

12

clients can manifest an intent to engage an attorney either through statements or "conduct." *Page v. Frazier*, 445 N.E.2d 148, 152 (Mass. 1983). *See also* REST. 3D. OF THE LAW GOVERNING LAWYERS § 14 cmt. c. ("The client's intent may be manifest from surrounding facts and circumstances, as when the client discusses the possibility of representation with the lawyer and then sends the lawyer relevant papers or a retainer requested by the lawyer"). That makes sense. After all, a request is no less "concrete" and "explicit" when communicated through deeds rather than words.

### 2. BlueRadios also requested advice and assistance from HBSR through Kopin.

BlueRadios also made many requests for advice and assistance through Kopin, acting as BlueRadios' agent. Unable to dispute either these communications' existence or relevance, HBSR instead leans on waiver. Despite what HBSR insists, however, regardless of whether BlueRadios expressly referred to Kopin as its "agent" the district court (HBSR.Br.48-49), BlueRadios expressly argued that it communicated with HBSR "through" Kopin (A536, A589-90, A610, A633-34 A1927)—an unmistakable reference to Kopin's status as BlueRadios' agent. BlueRadios has merely "flesh[ed] out" that argument on appeal. *Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Local 374*, 175 F.3d 526, 529-30

13

(7th Cir. 1999). That is entirely permissible. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Furthermore, waiver is ultimately a matter of "discretion," *United States v. La Guardia*, 902 F.2d 1010, 1013 (1st Cir. 1990). And "it would be in disharmony" with the purpose of appellate review to disregard every "nuance or shift in approach urged by a party simply because it was not similarly urged below." *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1314 (8th Cir. 1991).

>   **3.    HBSR's other attempts to avoid the genuine issues of material fact in this case are meritless.**

Despite what HBSR insists, the third prong of *DeVaux* is also satisfied here. HBSR unquestionably "agreed" to provide BlueRadios with legal services (*see* HBSR.Br.51), not only by filing patent applications on its behalf, but also by communicating with patent authorities as BlueRadios' "Attorney" and responding to BlueRadios' individualized requests for legal advice and assistance. BlueRadios also relied on the existence of that relationship (*see id.*) by disclosing its deeply confidential information to HBSR in the course of preparing the patent applications.

Finally, there is no evidence that the attorney-client relationship ended outside the limitations period. While HBSR emphasizes that direct communication between HBSR and BlueRadios had ceased by 2016 (HBSR.Br.12, 51), HBSR still continued to prosecute patent applications naming BlueRadios inventors long after those communications and after this lawsuit was filed.

For all these reasons, the district court erred in refusing to recognize BlueRadios' attorney-client relationship with HBSR and rejecting its invocation of the "continuing representation" doctrine.[3] The district court's holdings on these issues must therefore be reversed.

## II.  HBSR owed a duty of disclosure to BlueRadios even in the absence of an attorney-client relationship.

Yet even if HBSR and BlueRadios had no attorney-client relationship, BlueRadios can still maintain claims against HBSR, and limitations would still have been tolled on BlueRadios' claims against HSBR, as the result of HBSR's

---

[3] HBSR's defense of the district court's dismissal of BlueRadios' claims against Lawrence Cogswell also fails. It does not matter whether Cogswell was a "partner" during the events in question (HBSR.Br.45-46 n.9); the duties of "loyalty" and to provide "competent" counsel apply to *all* "lawyers"— associates and partners alike. Mass. R. Prof'l Conduct 1.03, 1.07 cmt. 1. It likewise makes no difference that Cogswell communicated with BlueRadios only through Klobucar. Klobucar was not "opposing counsel"—he was an agent of HBSR's client. (HBSR.Br.46 n.9.)

fraudulent concealment of its harmful conduct. HBSR provides no reason to believe otherwise.

HBSR emphasizes that Massachusetts will not impose fiduciary duties giving rise to a duty of disclosure between attorneys and non-clients when doing so would create "conflict[s]" between an attorney's duties to the non-client and another client. (HBSR.Br.59.) But HBSR's duties to BlueRadios arose at the outset of the Golden-i project in 2007, when BlueRadios began disclosing its most confidential information to HBSR in reliance that such disclosures would be protected under the attorney-client privilege. (*See* Br.10,44.) At that time, there was not even a "potential" for conflict between the interests of Kopin and BlueRadios (HBSR.Br.59)—they were aligned in obtaining the greatest protection possible for BlueRadios' inventive contributions. So there is no obstacle to imposing a duty of disclosure upon HBSR in this case.

HBSR also owed duties to BlueRadios as its agent—the result of the joint venture and the powers of attorney executed in HBSR's favor. HBSR offers nothing but regurgitated complaints about waiver and the existence of the powers of attorney to suggest otherwise. (HBSR.Br. 44.)

### III.  BlueRadios' claims are timely under the discovery rule.

HBSR fares no better against the numerous flaws in the district court's holding that BlueRadios' legal malpractice claims are time-barred.

### A.  The patent applications BlueRadios received did not convey limitations-triggering notice.

For instance, HBSR cannot overcome the unbroken line of cases holding that misstating inventorship in a patent application cannot constitute limitations-triggering harm—a rule that goes double for provisional applications like the '090, which are mere placeholders conveying no legal rights. (*See* Br.47-52.)

HSBR insists there is some inconsistency between basing a malpractice claim on errors in a patent application and arguing that the patent application itself causes no harm. (*See* HBSR.Br.30.) Yet no inconsistency exists. While errors in patent applications can potentially *cause* harm, the harm itself will not *manifest*, if at all, until a patent issues on the application. That potential for *future* harm does not undermine the "present value" of the invention embodied in the application. (HBSR.Br.30.) The unique, iterative, years-long patent-application process ensures that virtually all problems in applications can be fixed and usually will be—just like typos in draft briefs. It is sheer speculation to suggest that an error in an application will *ever* cause harm.

That is why HBSR has identified no case—anywhere—adopting its preferred "discounted present value" theory of accrual.

Nor can HBSR disregard the cases holding that patent applications cause no limitations-triggering harm merely because they mostly come from outside Massachusetts. After all, Massachusetts follows an even more generous rule, embodied in *Eck v. Kellem*, 748 N.E.2d 1047 (Mass. App. 2001) and *Spilios v. Cohen*, 647 N.E.2d 1218 (Mass. App. 1995), that a lawyer's defectively drafted documents do not trigger limitations when drafted—or even when filed—but only when enforced to the client's detriment. HBSR cannot seriously contend that BlueRadios is barred from offering these two authorities simply because it did not cite them in the court below (HBSR.Br.31)—especially when these cases merely augment the argument BlueRadios clearly did make in the district court about the harmless nature of patent applications.

HBSR's attempt to distinguish *Eck* and *Spilos* is also unavailing. HBSR notes that these cases arise in the context of the "continuing representation" doctrine. (HBSR.Br.32.) Of course, *this* case arises in that same context, and as HBSR repeatedly emphasizes, the continuing representation doctrine does

not apply when a party has actual knowledge of harm (*id.*21,32)—so these cases' holdings about *when* such harm occurs are controlling.

Finally, HBSR's effort to find cases contrary to *Eck* and *Spilos* is also ineffective. (HBSR.Br.32-33.) One case it cites, *Salin v. Shalgian*, 467 N.E.2d 475 (Mass. App. 1984), is merely an example of a situation in which limitations-triggering harm occurred when a defective document was enforced—and thus actually favors BlueRadios, not HBSR. *See id.* at 476-77 (defective certificate of title was not harmful when drafted, but when the defect was asserted as a defense in litigation). The remainder are cases in which the limitations-triggering "harm" at issue did not result from a defective document itself, but from "legal expense[s]" incurred to ameliorate its harmful effects. *See Levin v. Berley*, 728 F.2d 551, 555 (1st Cir. 1984) (plaintiff's cause of action for malpractice accrued when plaintiff was put to "appreciable expense" to justify a marital tax deduction recommended by attorney); *Mass. Elec. Co. v. Fletcher, Tilton & Whipple, P.C.*, 475 N.E.2d 390, 392 (Mass. 1985) (company suffered appreciable harm when it became "clear that [it] would incur substantial legal expenses in defense of a claim" based on attorneys' "negligent conduct"). HBSR therefore cannot cite a single case suggesting that a

19

defectively drafted patent application *itself* causes limitations-triggering harm—and provides no reason it should.

### B. Nothing in the 2008-2009 timeframe gave BlueRadios notice of injury or HBSR's malpractice.

HBSR's defense of the district court's conclusion that BlueRadios obtained limitations-triggering notice during the 2008-2009 timeframe is also entirely unpersuasive—and again, the biggest problems with the district court's analysis are those that HBSR simply does not address.

#### 1. The patent applications BlueRadios received did not, and could not, convey limitations-triggering notice.

For instance, HBSR continues to rely on the district court's conclusion that the '090 provisional conveyed notice that BlueRadios had experienced injury from HBSR's legal malpractice simply because, upon receipt of a draft of that provisional, Mark Kramer expressed mild concern in an email to BlueRadios co-founder Will Tucker that it seemed "sort of reckless" to leave BlueRadios inventors off the provisional. (HBSR.Br.26) (quoting A5453). HBSR entirely ignores that BlueRadios asked HBSR to address the issue— through Kopin. While BlueRadios issued no "formal letter" on this issue (HBSR.Br.2), Tucker forwarded the email to Jacobsen who forwarded it to HBSR—copying Tucker—to communicate that the issue *was* being addressed. (*See* Br.59-60.) Both Kopin and HBSR then assured BlueRadios

20

that they wanted to add Sample to the '090 provisional to ensure BlueRadios received appropriate credit. (Br.50n.7.) Massachusetts law provides that such assurances keep clients from obtaining "notice of appreciable harm," preventing limitations from running. (*See* Br.60n.7.)

HBSR also never explains how Kramer's notice of one potential issue with one provisional could give BlueRadios notice of the surreptitious changes HBSR had made to other filings aside from the '090, much less reveal the entire plot between HBSR and Kopin to deprive BlueRadios of its intellectual property—especially when both the changes and the plot were kept secret from BlueRadios. Nor did this episode remotely establish that either Kramer or Tucker were experts on all things patents, inventorship, or assignments—especially when both founders disclaimed such expertise. (*See* Br.61.) HBSR also makes no effort to explain how it could be proper for the district court to deem these disclaimers "unpersuasive" without violating summary judgment standards. (*Id.*) (quoting ADD19). Nothing about the '090 provisional therefore establishes that BlueRadios had notice of its claims against HBSR.

HBSR's attempts to prove that BlueRadios obtained notice of injury through the patent filings that HBSR amended during the 2008-2009 timeframe (*see* Br.52-53) are likewise unavailing. On the '462 application, for

21

example, HBSR does not even try to explain how Tucker might have discovered the surreptitious changes HBSR made to delete BlueRadios inventors from the application when the copy he received listed those inventors. (*See* Br.14-15, 54.) Instead, HBSR focuses solely on the fact that the application indicated that it had been assigned to Kopin. (*See* HBSR.Br.10,27.) Yet HBSR cannot explain how notice of this assignment put BlueRadios on notice of any injury.

There was nothing improper about indicating that Kopin was an "assignee" on the patent. After all, Kopin was the "assignee" of its employees' inventorship rights, just like BlueRadios was the "assignee" of its own employees' rights. The application's mention of Kopin as an assignee therefore did not necessarily mean it was the *sole* assignee. And in any event, the mere fact the application *stated* it had been assigned did not affect an assignment. "Recordation of an assignment in the assignment records of the [Patent and Trademark] Office *does not*, by itself, permit the assignee to take action in the application, patent, or other patent proceeding." U.S. Patent & Trademark Office, *Manual of Patent Examining Procedure* § 301(V) (9th ed. 2014). (emphasis added). The validity of such an assignment must be reflected in some other document outside of the application. *Id.* § 301(I) & (II).

Moreover, the assignment itself never formed the basis of BlueRadios' malpractice claims; it became an issue only when HBSR used the assignments as the basis to file terminal disclaimers indicating it had "100% ownership rights" in certain applications. (*See* Br.15) (citing A1638, A8899). And if the assignment was a problem, Tucker would not be able to identify it: He had no legal training and therefore had no idea what an "assignment" was. A6367-68, A6370, A8348. His ignorance is entirely reasonable. After all, Klobucar himself did not flag the assignment of the '462 application as a potential issue in his own review of the Golden-i portfolio. (*See* HBSR.Br.15) (quoting A8380). And Klobucar is a licensed patent attorney.

 As for the '646 Application, HBSR emphasizes Kramer's recognition of Jones's omission from the application but fails to mention that Kramer did not know whether that omission was appropriate at the time. (*See* A6351) (citing Dkt.234-6 at 213:1-214:7; Dkt.252 at 159:7-160:12). Kramer's inability to recognize that the omission raised any issue was entirely reasonable too, given that Klobucar also did not flag this issue in his search. This issue was not identified until discovery in the Kopin case. (*See* Br.58.)

Finally, HBSR's suggestion that BlueRadios' mere receipt of *other* applications put BlueRadios on notice of HBSR's malpractice makes no sense

and cannot be squared with the numerous Massachusetts holding that mere receipt of a document *does not* necessarily convey limitations-triggering notice. (Br.56-57.) HBSR provides no reason to disregard those holdings. After all, that result is essentially required by the summary judgment burden, which requires district courts to grant inferences in favor of the nonmovant—crediting rather than ignoring clients' reasonable statements that they did not receive notice.

This is also why the discovery rule ordinarily presents issues of fact and can be decided on summary judgment only when "the facts about discovery of harm are undisputed," *Vinci v. Byers*, 837 N.E.2d 1140, 1145 (Mass. App. 2005). Discovery of harm will only be deemed to be undisputed when parties *admit* to having knowledge or behave in such a way to suggest having such knowledge. All of HBSR's own cases follow one of these two fact patterns. *See Techs., Inc. v. Helming*, 815 F. Supp. 2d 411, 421 (D. Mass. 2011) (client triggered limitations when he expressed "serious reservations" with attorney's handling of case "in the form of in-person communications, emails, and letters"); *Byers*, 837 N.E.2d at 1145 (client expressed concern about the lawyer's strategy to others); *Lyons v. Nutt*, 763 N.E.2d 1065, 1069-70 (Mass.

2002) (client, a lawyer, triggered limitations upon his realization that the attorneys in the law firm "didn't know what they were doing").

This case is different from these other cases. Even if HBSR's patent filings *could* trigger limitations, BlueRadios gave *no* indication during the 2008-2009 timeframe that it knew of issues with any of the filings other than the '090 provisional—and any "misgivings" it might have had about the "090 itself were assuaged by Kopin's assurances.

Indeed, it is not even clear what HBSR believes BlueRadios to have learned in that period that *should* have triggered limitations. HBSR is vague on this score—saying only that receipt of the applications informed BlueRadios of nonspecific "conduct" or the "facts underlying this lawsuit." (HSBR.Br.5, 28.) Yet even learning of changes to inventorship in a patent filing could not convey limitations-triggering notice of malpractice in this case. After all, those changes may have been entirely proper. And while clients cannot refuse to make "connections" between facts "once they have been made aware of them," and may have a "duty of inquiry" to learn the true facts once their suspicion is aroused, *something* must exist to arouse suspicion. (*See* HBSR.Br.29.) The client must learn "the facts that give rise to … a breach of duty." *See Fessenden Sch. v. Hub Int'l Ltd.*, 99 Mass. App. Ct. 1132, 2021 WL

2742803, at *3 (2021) (unpublished). The duty at issue here is HBSR's duty of loyalty, which the law firm violated through its plot with Kopin to deprive BlueRadios of ownership of the Golden-i intellectual property. And none of the patent applications gave any hint of that plot. BlueRadios did not learn the facts giving rise to that plot until 2017, during discovery in the Kopin case. (Br.58.) HBSR cannot demonstrate that anything occurring before that point conveyed limitations-triggering notice to BlueRadios.

### 2. The publication of patent applications also did not convey limitations-accruing notice to BlueRadios.

HBSR fares even worse in its reliance on the district court's holding that BlueRadios obtained limitations-accruing notice the moment HBSR's patent applications were published. HBSR contends that BlueRadios "should have known" about the problems with the patent applications once they were published because at that point they "could have been viewed by anyone." (HBSR.Br.41.) But knowledge that BlueRadios *could* obtain is different from the knowledge that BlueRadios *should have* obtained. Only the latter triggers limitations, but as BlueRadios has explained, and HBSR once again ignores, Massachusetts law is clear that the question of whether a party *should* have obtained information is a judgment call that only a jury can make and is not amenable to summary judgment. (*See* Br.23, 46.)

The district court could convert the question of what BlueRadios *should* have known into an issue amenable to resolution on summary judgment only by invoking the concept of "constructive notice"—the idea that the law "impute[s]" notice of facts in "public records" even *in the absence* of actual notice. Constructive Notice, *Black's Law Dictionary* (6th ed. 1991). HBSR now insists that the district court *did not* rely on that now-discredited doctrine—despite twice mentioning it in its opinion (HBSR.Br.41)—but that leaves the district court with no basis to decide what BlueRadios *should have known* on summary judgment, and no basis to conclude that the mere publication of the patent applications triggered limitations.

**C.    Nothing occurring during Klobucar's 2014 limited search of the Golden-i patent portfolio gave BlueRadios limitations-triggering notice.**

Finally, nothing occurring before, during, or after Klobucar's limited search of the Golden-i patent portfolio in 2014 could provide BlueRadios with limitations-triggering notice. HBSR offers nothing to suggest otherwise.

Indeed, HBSR again doubles down on the district court's misrepresentation of the record to suggest that BlueRadios became "concerned" about the contents of the Golden-i portfolio even before engaging Klobucar (HBSR.Br.25), ignoring that the testimony upon which the district

27

court made this finding referred exclusively to concerns BlueRadios developed *after* Klobucar's search. Only *after* hearing Klobucar's report about the state of the Golden-i patent portfolio (well within the limitations period) did Kramer notice that he "couldn't find our names on patents that we were claimed to be put on from Kopin and our patent attorney HBSR." (Br.64) (quoting ADD24.)

HBSR offers no evidence—none—to suggest that Kramer had reason to suspect BlueRadios had been harmed by a plot between HBSR and Kopin *before* engaging Klobucar. Indeed, HBSR elsewhere acknowledges that Kramer asked Klobucar to conduct his initial search simply to understand the extent of BlueRadios' "past IP" rights in the Golden-i portfolio in advance of a potential acquisition. (HBSR.Br.13.) And while Kramer expressed "surprise[]" upon contacting Jacobsen about the portfolio only to hear Jacobsen say that he "knew nothing about the patents," that did not give Kramer any "misgivings" about the status of the patents themselves—or any errors they might contain. (HBSR.Br.13) (quoting A6657.)

For this reason, Klobucar was not hired to "identify" issues in the portfolio in advance of "fixing" them. (HBSR.Br.20,36-37.) Indeed, Klobucar was not "asked to … evaluate … anything that HBSR had done" and had no knowledge that there might be any issues with the portfolio when he began his

task. A4098-99. Accordingly, the "fees" Klobucar billed for his search were not incurred to overcome any harm caused by HBSR's malpractice and therefore cannot constitute limitations-triggering injury. (HBSR.Br.20.)

In contending otherwise, HBSR questions whether Massachusetts law limits the fees that trigger limitations to those incurred to address harm caused by malpractice. (HBSR.Br.32.) That contention makes absolutely no sense, and Massachusetts cases are clear that only fees expended to "ameliorate the harm" a client suffers from malpractice or "defend[] its rights" against that harm will trigger limitations. (HBSR.Br.33.) That includes *Fessenden School*, 2021 WL 2742803, at *3, because in that case, the court held that the fees a school incurred locating its insurance policies in a dispute over coverage for sex-abuse claims triggered limitations only because the school's inability to locate the policies resulted from its attorney's faulty advice—the attorney had advised the school that it need not keep copies of the policies more than 7 years. Accordingly, HBSR offers nothing to suggest that the fees BlueRadios incurred in Klobucar's patent search triggered limitations.

HBSR likewise offers no reason to believe BlueRadios learned anything from Klobucar's search outside the limitations period that could convey limitations-accruing notice to BlueRadios. And nothing that Klobucar himself

learned before the limitations period commenced would have done so either—especially because the concerns that Klobucar raised *after* that search were met with assurances from HBSR that ███████████████████████████ ████████████████████ and ███████████████████████████████ (*See* Br.20,60n.7.) These assurances kept limitations from running, and the fact that they were made from one lawyer to another is irrelevant. *See Eck*, 748 N.E.2d at 1049, 1050-51 (assurances from client's former counsel reassuring his trial counsel that client would incur no liability, and that the former and current attorneys were "aligned entirely" in their legal positions prevented limitations from accruing); *Rosen Constr. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 364 F.3d 399, 406–07 (1st Cir. 2004) (limitations did not accrue because former firm continued to assure client that the contract it had drafted would protect client and continued to work with client's trial counsel).

Nor, for that matter, could anything that Klobucar learned during his search be attributed to BlueRadios in a manner that would trigger limitations. While an agent's "knowledge" may be attributable to its principal, as the court held in *Doe v. Creighton*, 786 N.E.2d 1211, 1213 (Mass. 2003), Massachusetts requires "awareness" to trigger accrual—and "awareness" is something only

a particular person can possess. HBSR avers that the terms "knowledge" and "awareness" are synonymous. Not so. "[K]nowledge" comes in two forms: "actual knowledge"—those things a person obtains subjective awareness about and "constructive knowledge"—those things that a person *should* know because they possess the information required to make the discovery. And only "actual knowledge" equates to "awareness." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 512 (3d ed. 2011) ("Actual "knowledge" means actual "awareness of a fact or condition.") (contrasting "knowledge" with "notice"); *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) ("[T]he term 'actual knowledge' refers to whether a person is 'aware of' information.").

Whether the singular awareness required to trigger limitations must exist inside the client or inside the client's agent, it must exist within *some* individual person. (*See* HBSR.Br.38-39.) It cannot be compiled from bits of knowledge cobbled together from different people when none of those people actually possessed sufficient knowledge to make the inferences necessary to trigger limitations on their own.

Despite what HBSR suggests, *Doe* itself is not inconsistent with that rule. (*See* HBSR.Br.39n.8.) In *Doe*, the court held that a woman discovered the

source of her psychological problems, and triggered limitations on her claims of sexual trauma, when she visited a psychiatrist who diagnosed her psychological problems as connected with her past sexual trauma—even though she claimed that the nature of the trauma prevented her from subjectively recognizing the connection until much later. 786 N.E.2d at 1213. This was not, as HBSR supposes, because Massachusetts does not require the plaintiffs to obtain actual "awareness" of their injuries to trigger limitations, but because the court concluded that her explanation for her lack of subjective awareness was not "objectively reasonable." *Id.* at 1214. So *Doe* will not support HBSR's collective corporate awareness theory of limitations. That means nothing Klobucar learned outside the limitations period could trigger limitations, and nothing else could trigger limitations either.

***

In sum, HBSR offers nothing to suggest that BlueRadios' claims against HBSR were properly dismissed. This Court must therefore act to ensure that HBSR does not avoid accountability for enabling Kopin to improperly become the sole owner of a patent portfolio worth nearly half a billion dollars that contains inventions belonging solely and exclusively to BlueRadios. And it

must act to ensure that the erroneous result reached below does not harm other inventors, entrepreneurs, and joint venturers.

## CONCLUSION

The Court should reverse the summary judgment in HSBR's favor, grant BlueRadios' motion for summary judgment on the attorney-client relationship, and remand the case for trial.

Respectfully submitted,

/s/ *J. Carl Cecere*

David B. Seserman
SESERMAN LAW LLC
3900 E. Mexico Ave.
Suite 300
Denver, CO 80210
(303) 900-2406

Douglas W. Salvesen
Sanford F. Rems
YURKO PARTNERS, P.C.
One Tech Drive
Suite 205
Andover, MA 01810

J. Carl Cecere
CECERE PC
6035 McCommas Blvd.
Dallas, Texas  75206
(469) 600-9455
ccecere@cecerepc.com

# CERTIFICATE OF COMPLIANCE

*Certificate of Compliance with Type-Volume Limitation,*
*Typeface Requirements, and Type Style Requirements*

1.      This brief complies with the type-volume limits in Federal Rule of Appellate Procedure 32(a)(1) because this brief contains 6,421 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Century Expanded BT font.

July 7, 2025                                    */s/ J. Carl Cecere*

                                               J. Carl Cecere

                                               Attorney for Appellant

                                               Cecere PC
                                               6035 McCommas Blvd.
                                               Dallas, TX  75206
                                               ccecere@cecerepc.com
                                               tel: 469.600.9455

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2025, I electronically filed the Reply Brief for BlueRadios, Inc. with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF.

July 7, 2025                               */s/ J. Carl Cecere*

                                          J. Carl Cecere

                                          Attorney for Plaintiff-Appellant